Norman H. LESSER and Rhoda I. Lesser, Plaintiffs-Appellants,

v.

BRANIFF AIRWAYS, INC., Defendant-Appellee.

No. 75–1043.

United States Court of Appeals, Seventh Circuit.

Argued April 17, 1975.

Decided June 18, 1975.

go bound for San Antonio, Texas. In San Antonio plaintiffs were to transfer to defendant's flight No. 15 to complete their journey to Acapulco, Mexico. When plaintiffs arrived in San Antonio they were refused permission to board flight No. 15 by several of the airline's employees. An argument ensued, during which the employees allegedly removed Norman Lesser from their check-in counter by force. The argument continued and ultimately the airline people called the police. In the course of his official duties, Gerald Davis, a San Antonio police officer, arrived, consulted with the employees, and arrested Lesser. The officer forcibly removed Lesser from the airport and took him to a local jail where he was incarcerated on a charge of being drunk, a misdemeanor. At Lesser's trial on the charge, the officer and several of the airline employees testified against Lesser. Lesser was acquitted.

Subsequently, plaintiffs brought this suit against Braniff to recover damages occasioned by this incident. Counts one and two of the complaint were specifically grounded on section 2 of the Ku Klux Klan Act of 1871, 17 Stat. 13, now codified at 42 U.S.C. § 1985(3),[1] alleging a conspiracy between defendant, its agents, and officer Davis for the purpose of depriving plaintiffs of various constitutional rights. Defendant moved to dismiss these counts for failure to state a claim since the pleadings contained no allegation of racial or class-based discriminatory animus on the part of the

George P. Lynch, Chicago, Ill., for plaintiffs-appellants.

Howard T. Brinton, Douglas R. Carlson, George W. Davis, Chicago, Ill., for defendant-appellee.

Before FAIRCHILD, Chief Judge, and SWYGERT and TONE, Circuit Judges.

SWYGERT, Circuit Judge.

On March 3, 1972 plaintiffs Norman H. Lesser and Rhoda I. Lesser boarded Braniff Airways flight No. 147 in Chica-

1. 42 U.S.C. § 1985(3) provides:

(3) If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

conspirators. In support of its motion, Braniff relied exclusively on Mr. Justice Stewart's analysis of section 1985(3) in *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). In reply, plaintiffs sought to distinguish *Griffin* on the basis that its analysis applies only to purely private conspiracies. Plaintiffs contended that in the case of the more "traditional" situation in which private persons are conspiring with public officials operating under color of official right, as was alleged in the instant case, no class-based discriminatory animus is required by *Griffin* or by the cases which preceded it. The motion to dismiss was granted by the district court on the ground that since there are "no allegations in either count of any racial or otherwise class-based invidiously discriminatory animus behind the alleged actions of defendant and state officials * * * 42 U.S.C. § 1985 does not apply . . . and the Court, thus, lacks jurisdiction under 28 U.S.C. § 1343 without further pleadings for the defendant was not then acting under color of any state law." [2] Plaintiffs did not choose to amend their pleadings, but moved instead for reconsideration of the court's order dismissing counts one and two. The motion was denied. Plaintiffs ultimately dismissed their other claims and now appeal from the dismissal of counts one and two for failure to state a claim.

We begin with the relevant statutory language of section 1985(3):

> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . [and] if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

Plaintiffs agree that when purely private conspiracies are involved, the words "equal protection" and "equal privileges and immunities" require that racial or other class-based invidiously discriminatory purpose must underlie the actions of the conspirators in order for section 1985(3) to apply. This was the situation in *Griffin v. Breckenridge.* Plaintiffs seek to distinguish that case on the basis that in conspiracies directly involving public officials there is no need for any additional element of state action; they

---

**2.** Presumably, the district judge had in mind 42 U.S.C. § 1983 which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

The Supreme Court has held that under this statute a private party who conspires with one or more public officials to deprive another of a right secured by the Constitution and laws of the United States is acting "under color of law" within the terms of the statute. *Adickes v. Kress & Co.,* 398 U.S. 144, 150–52 & n. 7, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). This construction of section 1983 does not conflict with

our previous holding that this section does not provide a cause of action for conspiracy per se. Thus, in *Jennings v. Nester,* 217 F.2d 153 (7th Cir. 1954), we held that section 1983 does not provide a cause of action for "conspiracy to deny due process" and that an "actual denial of due process [is required] before a cause arises." *Id.* at 154. The holding in *Jennings* was followed in our subsequent decision in *Egan v. City of Aurora,* 291 F.2d 706 (7th Cir. 1961). These cases do not hold that a direct violation of section 1983 by a private person cannot be established by proof of a conspiracy with state officers *and* an effective deprivation of Constitutional rights. They merely preclude a section 1983 cause of action based on the conspiracy alone. Under *Adickes,* the conspiracy element only serves to satisfy the "under color of state law" requirement. The gist of the cause of action is the deprivation and not the conspiracy.

urge that the discriminatory animus requirement therefore becomes superfluous in such cases. Under this theory, the term "equal" is read out of the statute completely save for those cases where no other basis for a finding of state action exists.[3] In these latter cases, the argument runs, the element of racial or other invidious discrimination is required in order to elevate the deprivation of rights to constitutional dimension either under the Fourteenth[4] or Thirteenth Amendments. In this analysis the term "equal" is not construed as a necessary element of any section 1985(3) cause of action, but as an alternative jurisdictional base. We reject this limitation of *Griffin* as being inconsistent with the broad language and historical analysis found in the Supreme Court's opinion in that case and as imposing on the plain language and organization of section 1985(3) a wholly unnatural construction.

In *Griffin,* as we have pointed out, a private conspiracy was alleged. The purpose of the conspiracy was to deny to certain black persons, one of whom defendants believed to be a civil rights worker, equal enjoyment of various rights including the right to travel interstate. The district court had dismissed the complaint for failure to state a claim, relying on *Collins v. Hardyman,* 341 U.S. 651, 71 S.Ct. 937, 95 L.Ed. 1253 (1951), for the proposition that section 1985(3) only reaches conspiracies under color of state law. The court of appeals reluctantly affirmed, expressing doubts about the continued vitality of *Collins,* at least in relation to private conspiracies aimed at interfering with "rights of national citizenship." 410 F.2d 817, 823 (5th Cir. 1969).

In reversing, the Supreme Court held that section 1985(3) is not limited in its application to conspiracies involving state action. Concerning the apprehensions expressed by the *Collins* Court as to possible constitutional problems involved in applying this section to private conspiracies,[5] the Court in *Griffin* noted that

**3.** As we pointed out in *Dombrowski v. Dowling,* 459 F.2d 190 (7th Cir. 1972), there are two relevant areas of inquiry concerning the element of state action under the Civil Rights Act of 1871: state action relative to the nature of the conduct proscribed, and state action as an element of the interests of the plaintiff which are protected. We recognized in *Dombrowski* that section 1985(3), unlike section 1983, does not require state action as an element of the conduct proscribed. At the same time we noted that any plaintiff seeking to recover under section 1985(3) for conspiracy to violate his Fourteenth Amendment rights would have to show, *as an element of his protected interest under the Fourteenth Amendment,* some state involvement in the discrimination complained of, since that amendment does not prohibit purely private discrimination. 459 F.2d at 194–95 & n. 9.

**4.** Citing *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1971), and *Huey v. Barloga,* 277 F.Supp. 864 (N.D.Ill. 1967), for the proposition that state *inaction* in the face of pervasive racial or other invidious discrimination may satisfy the state involvement requirement under the Fourteenth Amendment, plaintiffs urge that

the pleader in a 42 U.S.C. 1985(3) cause may plead in the case of a purely private conspiracy the invidious class or race based discrimination, if that be the fact, which will furnish the necessary state involvement in a Fourteenth Amendment violation situation or the pleader may allege direct state involvement, if that be the fact, and fulfill the jurisdictional requirement. The pleader need not plead both direct state involvement and a class or race based discriminatory animus. Appellant's brief at 12–13.

**5.** The Court in *Collins* observed:

It is apparent that, if this complaint meets the requirements of this Act, it raises constitutional problems of the first magnitude that, in the light of history, are not without difficulty. These would include issues as to congressional power under and apart from the Fourteenth Amendment, the reserved power of the States, the content of rights derived from national as distinguished from state citizenship, and the question of separability of the Act in its application to these two classes of rights. 341 U.S. at 659, 71 S.Ct. at 940.

It is interesting to note that the Court in *Griffin* did not find it necessary to expressly overrule *Collins v. Hardyman.* Presumably, this is because *Collins* can be read as holding only that the complaint in that case failed to allege any racial or other invidiously discriminatory animus. Thus, the Court in *Collins* noted that

it is clear that this statute does not attempt to reach a conspiracy to deprive one of

it is clear, in the light of the evolution of decisional law in the years that have passed since that case was decided, that many of the constitutional problems there perceived simply do not exist. Little reason remains, therefore, not to accord to the words of the statute their apparent meaning. 403 U.S. at 96–97, 91 S.Ct. at 1795.

Proceeding to analyze the words of the statute, the Court noted the absence of any specific limitation therein which would call for a state action requirement:

> Indeed, the failure to mention any such requisite can be viewed as an important indication of congressional intent to speak in § 1985(3) of all deprivations of "equal protection of the laws" and "equal privileges and immunities under the laws," whatever their source. 403 U.S. at 97, 91 S.Ct. at 1796.

The Court further pointed out that the language of section 1985(3) was the product of full congressional debate and compromise, so that the failure expressly to require state involvement could hardly be viewed as a mere oversight. Pertinent to the question in this case is the Court's discussion of the limiting amendments made to the original language of the statute:

> As originally introduced in the 42d Congress, the section was solely a criminal provision outlawing certain conspiratorial acts done with intent "to do any act in violation of the rights, privileges, or immunities of another person. . . ." Cong.Globe, 42d Cong., 1st Sess., App. 68 (1871). . . . The enormous sweep of the original language led to pressures for amendment, in the course of which the present civil remedy was added. The explanations of the added language centered entirely on the animus or motivation that would be required, and there was no suggestion whatever that liability would not be imposed for purely private conspiracies. Representative Willard, draftsman of the limiting amendment, said that his version "provid[ed] that the essence of the crime should consist in the intent to deprive a person of the equal protection of the laws and of equal privileges and immunities under the laws; in other words, that the Constitution secured, and was only intended to secure, equality of rights and immunities, and that we could only punish by United States laws a denial of that equality." Id., at App. 188. Representative Shellabarger's explanation of the amendment was very similar: "The object of the amendment is . . . to confine the authority of this law to the prevention of deprivations which shall attack the equality of rights of American citizens; that any violation of the right, the animus and effect of which is to strike down the citizen, to the end that he may not enjoy equality of rights as contrasted

---

rights, unless it is a deprivation of equality, of "equal protection of the law," or of "equal privileges and immunities under the law". That accords with the purpose of the Act to put the lately freed Negro on an equal footing before the law with his former master. The Act apparently deemed that adequate and went no further.

What we have here is not a conspiracy to affect in any way these plaintiffs' equality of protection by the law, or their equality of privileges and immunities under the law. There is not the slightest allegation that defendants were conscious of or trying to influence the law, or were endeavoring to obstruct or interfere with it. The only inequality suggested is that the defendants broke up plaintiffs' meeting and did not break up meetings of others with whose sentiments they agreed. To be sure, this is not equal injury, but is no more a deprivation of "equal protection" or of "equal privileges and immunities" than it would be for one to assault one neighbor without assaulting them all, or to libel some persons without mention of others. Such private discrimination is not inequality before the law unless there is some manipulation of the law or its agencies to give sanction or sanctuary for doing so. Plaintiffs' rights were certainly invaded, disregarded and lawlessly violated, but neither their rights nor their equality of rights under the law have been, or were intended to be, denied or impaired. 341 U.S. at 661, 71 S.Ct. at 942.

with his and other citizens' rights, shall be within the scope of the remedies of this section." *Id.,* at 478.

403 U.S. at 99–100, 91 S.Ct. at 1797.

██ Drawing on this analysis of the legislative history of section 1985(3) the Court in *Griffin* summarized as follows:

It is thus evident that all indicators—text, companion provisions, and legislative history—point unwaveringly to § 1985(3)'s coverage of private conspiracies. That the statute was meant to reach private action does not, however, mean that it was intended to apply to all tortious, conspiratorial interferences with the rights of others. For, though the supporters of the legislation insisted on coverage of private conspiracies, they were equally emphatic that they did not believe, in the words of Representative Cook, "that Congress has a right to punish an assault and battery when committed by two or more persons within a State," *Id.,* at 485. The constitutional shoals that would lie in the path of interpreting § 1985(3) as a general federal tort law can be avoided by giving full effect to the congressional purpose—by requiring, as an element of the cause of action, the kind of invidiously discriminatory motivation stressed by the sponsors of the limiting amendment. . . . The language requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action. The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all. 403 U.S. at 101–02, 91 S.Ct. at 1798 (footnotes omitted).

Nothing in this language or in any other language in *Griffin* intimates that the requirement of invidiously discriminatory animus is limited to private conspiracies, and we see no rational basis for supposing that such a limitation was intended by Congress. Provision for a civil remedy under the circumstances involved here was made by Congress in section 1 of the Ku Klux Klan Act of 1871, 17 Stat. 13, now codified at 42 U.S.C. § 1983,[6] and there is no reason to think that Congress would have deemed it necessary to duplicate this remedy in enacting section 2 of that Act.[7] We therefore hold that a cause of action under 42 U.S.C. § 1985(3) requires in all cases an allegation that the conspiracy had as its purpose a class-based invidiously discriminatory deprivation of the equal protection of the laws or of equal privileges and immunities under the laws. Since the complaint in this case contained no such allegation, it was properly dismissed. The order of dismissal is affirmed.

---

**6.** *See* note 2, *supra.*

**7.** *Cf.* 403 U.S. at 98–99, 91 S.Ct. 1790.