Susan BRADLEY et al., Plaintiffs,

v.

David CLEGG et al., Defendants.

No. 74–C–375.

United States District Court,
E. D. Wisconsin.

April 20, 1976.

Friebert & Finerty, Thomas W. St. John, Milwaukee, Wis., for defendants.

Patterson, Jensen, Wylie & Silton, John G. Wylie, Appleton, Wis., for Clegg, Schroeder, Casey, Lenzner, Peters, Jack, Schmidt and McHugh.

Jack D. Walker, Melli, Shiels, Walker & Pease, Madison, Wis. and Donald Piper, Borgelt, Powell, Peterson & Frauen, Milwaukee, Wis., for Weihing.

David Braithwaite, Lathrop & Braithwaite, Hortonville, Wis. and Lawrence F. Waddick, deVries, Vlasak & Schallert, Milwaukee, Wis., for Jones.

## DECISION AND ORDER

MYRON L. GORDON, District Judge.

The plaintiffs in the above action have filed a motion pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, to dismiss two of the four counterclaims stated in the answer and counterclaim of the defendants David Clegg, Ken Schroeder, Clarence Casey, Wallace Lenzner, Richard Peters, Randy Jack, Robert Schmidt and David McHugh for failure to state claims upon which relief can be granted. I believe that the plaintiffs' motion should be granted.

## THE FIRST COUNTERCLAIM

The plaintiffs' action, brought pursuant to 42 U.S.C. § 1983, alleges that the plaintiffs' civil rights were violated by the defendants as a result of assaults which allegedly occurred while the plaintiffs engaged in picketing related to a labor dispute. The amended complaint alleges in part that the defendants named above are "members of a group of Hortonville area residents who have banded themselves together to oppose certain activities of the plaintiffs which are more fully described hereafter. Said group is referred to locally

in the Hortonville area as the Hortonville Vigilantes, and these defendants are so referred to in this Complaint."

The defendants' first counterclaim seeks damages for the allegedly libelous use by the plaintiffs of the term "Hortonville Vigilantes" in referring to the defendants. In addition to incorporating the uncontroverted allegations of the amended complaint and the allegations contained in the answer, the counterclaim alleges:

"(3) That in using the term 'Hortonville Vigilantes' in referring to the defendants, the plaintiffs have willfully and maliciously published this information, intending to lower the reputation of the defendants in the community and to expose them to public ridicule, contempt, and to injure their good names in the community, both individually and collectively, and to cause persons in the community to seek to avoid associating with the defendants, either individually or collectively; that no basis in fact existed for calling the defendants by such a name, as hereinabove alleged, and that all of the aforementioned tended to have the effect alleged, all to their great damage and injury in the amount of $1,000,000.00."

■ Use of allegedly defamatory language in connection with these proceedings is absolutely privileged. *Curtis Publishing Company v. Butts,* 388 U.S. 130, 152 n.18, 87 S.Ct. 1975, 1990, 18 L.Ed.2d 1094, 1109 (1967); *DiMiceli v. Klieger,* 58 Wis.2d 359, 365, 206 N.W.2d 184 (1973). The disposition of the plaintiffs' motion therefore rests on whether the counterclaim can fairly be said to allege publication by the plaintiffs outside of these proceedings. Paragraph (3) of the counterclaim, quoted above, does not itself allege any use by the plaintiffs of the term "Hortonville Vigilantes," but rather characterizes whatever use occurred as being libelous. Missing is any direct statement that the plaintiffs actually did use the term, whether in these proceedings or outside them. The remaining paragraphs of the counterclaim contain the term "Hortonville Vigilantes" only once—in a denial of the existence of such a group, incorporated

from the answer. Only the uncontroverted allegations of the amended complaint were incorporated, and each use of the term in the amended complaint occurred in a controverted allegation. While the defendants may have intended to allege the actual use by the plaintiffs of the allegedly libelous language, I believe that they have failed to do so in their first counterclaim and that the plaintiffs' motion to dismiss it should be granted.

## THE SECOND COUNTERCLAIM

The defendants' second counterclaim identifies three of the defendants as "taxpayers, citizens and parents of school children attending schools in the Hortonville School District" and alleges that the picketing activities of the plaintiffs were the result of a combination and conspiracy between the plaintiffs to harass and intimidate the defendants and their children and interfere with and disrupt the education of the defendants' children. It is alleged that these activities deprived the defendants of equal privileges and immunities under the law, and damages are sought pursuant to 42 U.S.C. § 1985(3).

The plaintiffs contend that the allegations of the counterclaim are conclusory, that the defendants have failed to allege any racial or otherwise class-based animus to the conspiracy, that there is no allegation that the purpose of the alleged conspiracy was to deprive the defendants of equal privileges and immunities, and that a private conspiracy to harass and interfere with education is not actionable under § 1985(3). I find it unnecessary to deal with the first three of these contentions, since I believe that the plaintiffs must prevail on their fourth argument.

The Supreme Court in *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), determined that § 1985(3) covered private conspiracies. However, the Court noted at page 101, 91 S.Ct. at page 1798, 29 L.Ed.2d at page 348:

"That the statute was meant to reach private action does not, however, mean that it was intended to apply to all tor-

tious, conspiratorial interferences with the rights of others."

The defendants explain their claim in their brief as follows:

"The essence of the claim stated in the second counterclaim is that the plaintiffs combined and conspired to interfere with the defendants' attempts to provide their children with an education and acted in furtherance of that end. It is the defendants' position that the state-created entitlement to an education confers a right and benefit upon its citizens, denial of which constitutes a denial of equal protection of the laws."

The United States court of appeals for the seventh circuit has noted that "the right secured by the Equal Protection clause of the Fourteenth Amendment is a right to protection against unequal treatment by a state." *Dombrowski v. Dowling*, 459 F.2d 190, 196 (1972).

■ In *Lesser v. Braniff Airways, Inc.*, 518 F.2d 538, 541 n.3 (7th Cir. 1975), the court explained its holding in *Dombrowski* as follows:

"[A]ny plaintiff seeking to recover under section 1985(3) for conspiracy to violate his Fourteenth Amendment rights would have to show, *as an element of his protected interest under the Fourteenth Amendment,* some state involvement in the discrimination complained of, since that amendment does not prohibit purely private discrimination." (Emphasis in original).

Since the defendants have failed to allege any state action, their Fourteenth Amendment claim is insufficient to meet this test, and since they do not claim to have alleged the deprivation of any other "right or privilege of a citizen of the United States," I must dismiss the second counterclaim.

Therefore, IT IS ORDERED that the plaintiffs' motion to dismiss the defendants' first and second counterclaims, designated in their answer and counterclaim as "Counterclaim" and "Second and Separate Cause of Action" be and hereby is granted.