**James DANAHER, Plaintiff,**

v.

**Ben MICHAW, Dick Quattrin, Joseph Dybel, Leonard Hoyda, Chester Czubala, Ray Harvey and Joseph Klen, as Trustees of the Fireman's Pension Fund of the City of Hammond, Indiana, Defendants.**

Civ. No. H 75–259.

United States District Court,
N. D. Indiana,
Hammond Division.

July 25, 1977.

Wilson, Donnersberger, Van Bokkelen & Reid by Fred G. Donnersberger, and Joseph S. Reid, Hammond, Ind., for plaintiff.

George J. Glendening, Hammond, Ind., for defendants.

## MEMORANDUM DECISION

McNAGNY, District Judge.

This cause came before the Court on the motion of defendants, Ben Michaw, Dick Quattrin, Joseph Dybel, Leonard Hoyda, Chester Czubala, Ray Harvey, and Joseph Klen, as Trustees of the Fireman's Pension Fund of the City of Hammond, Indiana, for summary judgment.

 In order to grant a motion for summary judgment, the Court must find that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Federal Rules of Civil Procedure, 56(c); *Poller v. Columbia Broadcasting System*, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). In making that determination (upon consideration of the facts in the record that appear in, inter alia, the depositions, affidavits, exhibits, and answers to interrogatories), the Court must view " 'the inferences to be drawn from the underlying facts . . . in the light most favorable to the party opposing the motion.' *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)." *Fitzsimmons v. Best*, 528 F.2d 692, 694 (7th Cir. 1976).

### I. FACTS

Plaintiff, James Danaher, was employed as a fireman with the Hammond, Indiana, Fire Department from May 16, 1957, through April 15, 1971. In April of 1971, plaintiff was examined and placed on medical disability leave. In June of 1971, plaintiff moved to Ft. Lauderdale, Florida, where he resided for approximately seven months. He then lived in Lafayette, Indiana, for one and one-half months before moving back to Hammond, Indiana. He stayed in Hammond for three months. On March 18, 1972 (during that three-month stay in Hammond), Mr. Danaher was re-examined by Dr. Murray Stasick, who concluded that Mr. Danaher "stay on disability for a 6 month period and at that time be re-evaluated for total disability." Plaintiff then moved to Orlando, Florida, where he resided until November of 1973.

By letter dated May 17, 1973, the Trustees of the Hammond Fire Department Pension Board (hereinafter "Pension Board") directed Mr. Danaher to report to Hammond on June 1, 1973, for a physical examination to re-evaluate his condition. Said physical examination was made by Dr. John Lanman.

On August 27, 1973, plaintiff was notified by the Pension Board that a disability hearing would be held on September 24, 1973. The hearing was held on that date and was concluded on October 11, 1973. The Pension Board decided that Mr. Danaher was able to be reinstated on light-duty status. Mr. Danaher reported for duty on November 16, 1973, and worked thereafter until July 1, 1974, at which time he again was retired due to medical disability.

On November 14, 1975, plaintiff filed his complaint against the Trustees of the Pension Board alleging that their conduct in calling him back to Hammond for re-examination violated his right to travel and that the circumstances surrounding his hearing violated due process.

### II. STATE STATUTES

In order to fully understand the context in which this case arose, it is necessary to set out the following Indiana statutes which govern the activities of the Pension Board.

*Indiana Code* § 19–1–37–13(a) (1976):

"If any member of the fire force of any such city, town, township or county becomes 65 years of age or is found, upon examination, by a medical officer, to be physically or mentally disabled, so as to render necessary his retirement from all service on the force, the chief of the fire force shall retire such person, and the board of trustees shall authorize the pay-

ment to such person, monthly from the pension fund the same as prescribed in section 11 [fourteen] [19–1–37–14], of this chapter. All physical and mental examinations of members of the fire force as herein provided shall be made on order of the chief of the fire force by a medical officer designated by the board of trustees of the firemen's pension fund."

*Indiana Code* § 19–1–37–17 (1976):

"After any member of such fire force shall have been retired upon pension by reason of disability, the board of trustees shall have the right, at any time, to cause such retired member again to be brought before it, and again be examined by competent physicians or surgeons, and shall also have the right to examine other witnesses for the purpose of discovering whether such disability yet continues, and whether such retired member should be continued on the pension roll; but he shall remain upon the pension roll until placed back in active service of the fire department, except in cases of dismissal or resignation. Such retired member shall be entitled to notice and to be present at the hearing of any such evidence, shall be permitted to propound any question pertinent or relevant to such matter, and shall also have the right to introduce evidence on his own behalf. All witnesses so produced shall be examined under oath, and any member of such board of trustees is hereby authorized to administer such oaths to such witnesses. The decision of such board shall be final, and no appeal shall be allowed therefrom, nor shall the same be reviewable by any court or other authority. If any such retired member is found, upon examination, to be physically able to be placed back in active service of the fire department, the board of trustees shall certify the name of such person, and the fact that he has been found physically able to be placed back in active service, to the board of safety, or other appointing authority, and such person shall be placed back in active service, by the appointing authority, as soon as the first vacancy in the fire force occurs thereafter."

## III. 42 U.S.C. § 1985(3)

■ Plaintiff alleges that his recall from Florida constituted a violation of 42 U.S.C. § 1985(3). That statute reads as follows:

"If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators."

In plaintiff's brief in opposition to defendants' motion for summary judgment, the following statement is made:

"If two or more of the defendants conspired to call plaintiff back due to his Florida residency and prevailed upon the remaining board members to call plaintiff back as [sic] claimed for relief is stated such [sic] conspirators under § 1985."

One requirement for stating a cause of action under 42 U.S.C. § 1985(3) is missing

from plaintiff's complaint. The Seventh Circuit, in *Lesser v. Braniff Airways, Inc.,* 518 F.2d 538 (7th Cir. 1975), specifically held that:

"... a cause of action under 42 U.S.C. § 1985(3) requires in all cases an allegation that the conspiracy had as its purpose a *class-based* invidiously discriminatory deprivation of the equal protection of the laws or of equal privileges and immunities under the laws." 518 F.2d at 543. (emphasis added)

■ There is no allegation of a class-based deprivation of rights in plaintiff's complaint. Indeed, at oral argument on the motion under consideration, counsel for plaintiff made it very clear to the Court that the disagreement between the parties was very personal in nature. This Court cannot imagine any set of facts which plaintiff might be able to produce which would show a class-based invidiously discriminatory deprivation on the part of defendants in this case.

## IV. 42 U.S.C. § 1983

### A. DUE PROCESS

Plaintiff alleges that he was deprived of due process of law by reason of the failure of defendants to give him a fair and full hearing. There is no allegation that the procedures enumerated in *Indiana Code,* § 19-1-37-17 (1976) were not followed. There is also no allegation that the statute is unconstitutional. Plaintiff's argument rests solely on his contention that the Pension Board made its decision before the hearing was held.

Plaintiff directs the Court's attention to no case law in support of his position on this issue. It appears that the substance of plaintiff's argument is that the hearing examiners were biased. The most recent decision of the Supreme Court on that issue is *Hortonville J.S.D. No. 1 v. Hortonville Ed.,* 426 U.S. 482, 96 S.Ct. 2308, 49 L.Ed.2d 1 (1976). The question presented in the *Hortonville* case was whether or not it is consistent with due process for school board members, who have been given the power to employ and dismiss teachers by state law, to dismiss teachers engaged in a strike prohibited by state law. The Court summarized the teachers' argument in the following way:

"They seem to argue the Board members had some personal or official stake in the decision whether the teachers should be dismissed, comparable to the stake the Court saw in *Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927), or *Ward v. Village of Monroeville,* 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972); see also *Gibson v. Berryhill,* 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973), and that the Board has manifested some personal bitterness toward the teachers, aroused by teacher criticism of the Board during the strike, see, e. g., *Taylor v. Hayes,* 418 U.S. 488, 94 S.Ct. 2697, 41 L.Ed.2d 897 (1974); *Mayberry v. Pennsylvania,* 400 U.S. 455, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971). Even assuming those cases state the governing standards when the decisionmaker is a public employer dealing with employees, the teachers did not show, and the Wisconsin courts did not find, that the Board members had the kind of personal or financial stake in the decision that might create a conflict of interest, and there is nothing in the record to support charges of personal animosity." 426 U.S. at 491, 96 S.Ct. at 2313, 2314, 49 L.Ed.2d at 8.[1]

---

1. *Tumey v. Ohio, supra,* held that it was a denial of due process for an individual accused of violating liquor laws to be tried before a judicial or quasi-judicial officer who is paid for his service as judge from fines levied against the accused. In *Ward v. Village of Monroeville, supra,* the Supreme Court of Ohio held that "even though the revenue produced from a mayor's court provides a substantial portion of a municipality's funds, such fact does not mean that a mayor's impartiality is so diminished thereby that he cannot act in a disinterested fashion in a judicial capacity." 271 N.E.2d 757, 761. *Gibson v. Berryhill, supra,* held that the possible interest with respect to pecuniary gain of members of the Alabama Board of Optometry disqualified those members form passing on the issue of license revocation. In *Taylor v. Hayes, supra,* the Court held that contempt of court charges against an attorney should have been adjudicated by a judge other than the one

■ In contrast to the cases cited by the Supreme Court in the *Hortonville* case, this case contains no allegations of any pecuniary interest held by the Trustees of the Pension Board with regard to the result of the hearing on the issue of plaintiff's return to duty. In addition, there is nothing in the record which indicates the kind of "running controversy" or personal bias referred to in *Mayberry* and *Taylor*. The most that can be said in plaintiff's favor is that statements may have been made by some members of the Pension Board which indicated they had "made up their minds ahead of time." Nevertheless, as the *Hortonville* case states:

> "Mere familiarity with the facts of a case gained by an agency in the performance of its statutory role does not, however, disqualify a decisionmaker. [citations omitted] Nor is a decisionmaker disqualified simply because he has taken a position, even in public, on a policy issue related to the dispute, in the absence of a showing that he is not 'capable of judging a particular controversy fairly on the basis of its own circumstances.'" 426 U.S. at 493, 96 S.Ct. at 2314, 49 L.Ed.2d at 9.

There is nothing in the record before the Court which tends to show that the Pension Board was incapable of judging plaintiff's case fairly on the basis of its own circumstances. Plaintiff did attach an affidavit to his brief in opposition to defendants' motion. That affidavit states that plaintiff applied for a home loan from a mortgage company in Winter Park, Florida. The employee handling plaintiff's loan application told Mr. Danaher that defendant Michaw, to whom she had written for verification of Mr. Danaher's pension, "was very 'uncooperative'." That statement from plaintiff does nothing to negate the capability of defendant Michaw or the other Trustees of the Pension Board to exercise fair judgment in passing on the question of whether or not plaintiff was still totally disabled.

■ In addition, it must be remembered that the decision to take a fireman off the pension rolls for the reason that previous disability no longer exists is based on medical evidence. *Indiana Code* 19-1-37-13 (1976). The record of the Pension Board hearings shows that written medical reports from Drs. John Lanman, Murray Stasick, and Melvin Hirsch were received in evidence during the hearings of the Pension Board. This Court cannot say that the determination of the Pension Board was not based on an evaluation of the evidence before it.[2]

## B. RIGHT TO TRAVEL

■ Plaintiff argues finally that defendants violated his right to travel by forcing him to leave Florida, his residence at the time he was asked to return to Hammond for physical examination and hearings. It is clear that the right to travel does provide a right protected by the Civil Rights Act.[3]

---

who held the attorney in contempt. In that case the Court stated that

> ". . . it appears to us that respondent [Judge] did become embroiled in a running controversy with petitioner [attorney]. Moreover, as the trial progressed, there was a mounting display of an unfavorable personal attitude toward petitioner, his ability, and his motives, sufficiently so that the contempt issue should have been finally adjudicated by another judge." 418 U.S. at 501, 94 S.Ct. at 2705, 41 L.Ed.2d at 909.

Finally, in *Mayberry v. Pennsylvania, supra,* another case involving criminal contempt charges, the Court also held that "by reason of the Due Process Clause of the Fourteenth Amendment a defendant in criminal contempt proceedings should be given a public trial before a judge other than the one reviled by the contemnor." 400 U.S. at 466, 91 S.Ct. at 505, 27 L.Ed.2d at 540.

2. There is no indication in the record that the decision of the Pension Board was appealed by plaintiff. Although *Indiana Code* 19-1-37-17 (1976) states that such a decision is final and not subject to judicial review, that provision of the statute was held to be unconstitutional by the Indiana Supreme Court in *State ex rel. Russel v. Michaw*, 256 Ind. 459, 269 N.E.2d 533 (1971). It occurs to this Court that any attack on the Pension Board's decision more properly should have been raised through an appellate proceeding.

3. See, e. g., *Gissi v. Codd,* 391 F.Supp. 1333 (E.D.N.Y.1974) (challenging a police department rule which required an officer on sick leave to remain in his residence); *Krzewinski*

However, as will be more fully discussed, plaintiff has not stated a cause of action based on a violation of the right to travel in the case at bar.

The Supreme Court stated in *Shapiro v. Thompson,* 394 U.S. 618, 629, 89 S.Ct. 1322, 1329, 22 L.Ed.2d 600, 612 (1969), that " . . . the nature of our Federal Union and our constitutional concepts of personal liberty unite to require that all citizens be free to travel throughout the length and breadth of our land uninhibited by statutes, rules, or regulations which unreasonably burden or restrict this movement."

This right has been held to include the "freedom to enter and abide in any State in the Union." *Oregon v. Mitchell,* 400 U.S. 112, 285, 91 S.Ct. 260, 345, 27 L.Ed.2d 272, 374 (1970). (Stewart, Burger and Blackmun, JJ., concurring in part and dissenting in part).

The Court is inclined to decide that the right to travel is not in any manner at issue in this case. Plaintiff does not argue that *Indiana Code* 19–1–37–17 (1976) contains any restrictions on a disabled fireman's right to travel, and a reading of that statute shows no such restrictions within it. Nor does plaintiff argue that he was not permitted to travel outside of the City of Hammond or the State of Indiana. He did in fact travel to Florida and reside there off and on from June of 1971 to November of 1974. Plaintiff does, however, argue that his right to travel was violated by his being called back to Hammond after he had moved to Florida; i. e., that he was called back because he was a Florida resident. In other words, the right to travel includes the right not to have to *return* to Hammond. This argument, in the Court's opinion, stretches the concept of the right to travel too far. Assuming, however, that the right to travel is at issue here, plaintiff still has failed to state a cause of action under 42

U.S.C. § 1983 for a violation of the right to travel.

As was stated previously, the right to travel involves the freedom to travel unburdened by *unreasonable* statutes, rules, or regulations. It is not an absolute right. Again, plaintiff has not challenged the constitutionality of the Indiana statute involved. However, it is necessary to refer to it in order to determine whether plaintiff's right to travel was unreasonably burdened.

*Indiana Code* 19–1–37–17 (1976) specifically gives the Pension Board "the right, at any time, to cause such retired member again to be brought before it, and again be examined by competent physicians or surgeons . . . ." The Pension Board's action in calling plaintiff back was clearly sanctioned by statute and theoretically could have been taken even if plaintiff had moved to a foreign country. It is difficult for the Court to see how the exercise by the Pension Board of the right to call back a fireman who was put on disability in order to determine whether or not the disability still exists could be considered unreasonable. The City certainly has a great interest in ascertaining whether firemen who have previously been found to be disabled continue to be disabled and continue to deserve disability benefits. The fact that plaintiff had to return from Florida for the proceedings may indicate that it was inconvenient for him to do so, but it cannot be said to be an unreasonable burden on his right to travel. No pension fund could exist for any length of time without a mechanism for re-examination.

In *Gissi v. Codd, supra,* note 3, a police officer challenged a police department rule which required an officer while on sick leave to remain in his residence. The plaintiff argued that the rule violated his right to travel. During the course of its discussion the Court noted that "[s]ome restrictions on the activity of a man on sick leave

*v. Kugler,* 338 F.Supp. 492 (D.N.J.1972) (challenging police and firemen residency requirements); and *Galvan v. Catherwood,* 324 F.Supp. 1016 (S.D.N.Y.1971), aff'd sub nom. *Galvan v. Levine,* 490 F.2d 1255 (2d Cir. 1973),

cert. denied, 417 U.S. 936, 94 S.Ct. 2652, 41 L.Ed.2d 240 (1974) (challenging a state policy of denial of unemployment benefits to claimants who moved to an area of high persistent unemployment).

are justifiable in order to prevent malingering or abuse. The Police Department should be in a position to verify whether plaintiff's absence from his residence is for a legitimate purpose and consistent with his claim of total disability to perform even restricted duty." 391 F.Supp. at 1336. The statute in the case at bar should be viewed similarly. The restriction imposed on Mr. Danaher, viz., being subject to re-examination, is justifiable in order to prevent one who is retired for medical reasons from taking advantage of such retirement if the disability no longer exists. Assuming that this constitutes a burden on his right to travel, it is not an unreasonable burden on that right.

It should also be noted that the re-examination of plaintiff which occurred in June of 1974 was not the first such re-examination. Plaintiff was re-examined in March of 1972, almost one year after his retirement due to medical disability. At that time, the examining physician made the following statement in a letter to the Hammond Fire Department: "I feel Mr. Danaher stay [sic] on disability for a 6 month period and at that time be re-evaluated for total disability." That recommendation of re-examination in six months had nothing to do with Mr. Danaher's living in Florida. Mr. Danaher was at that time still living in Hammond.

## V. SUMMARY

Plaintiff has failed to allege that the purpose of the alleged conspiracy against him was a class-based invidiously discriminatory deprivation of equal protection or equal privileges and immunities. No cause of action has been stated under 42 U.S.C. § 1985(3).

Plaintiff also has failed to show that there are any genuine issues of material fact concerning the fairness of the hearing held before the Pension Board on the issue of his continued medical disability or the reasonableness of any burden imposed upon his right to travel.

In essence, the situation in which plaintiff found himself was one of inconvenience. He had moved to Florida before he was called back to Hammond by the Pension Board, and, as a result, he was required to expend a considerable amount of money to return for his re-examination and hearing. Although it may have been more convenient for him to have been re-examined in Florida, he knew or should have known that a fireman who is retired due to medical disability is, pursuant to Indiana law, subject to being recalled and re-examined at any time. The fact that the circumstances surrounding Mr. Danaher's recall were not as favorable to him as he might have liked them to be does not give rise to the imposition of liability against the defendant Pension Board members.

Upon consideration of the memoranda in support of and in opposition to the motion of defendants for summary judgment, as well as the pleadings, affidavits, and exhibits of record and the arguments of counsel, the Court now finds that there is no genuine issue as to any material fact, and that the defendants are entitled to judgment as a matter of law.

It is therefore ORDERED that the motion of defendants Ben Michaw, Dick Quattrin, Joseph Dybel, Leonard Hoyda, Chester Czubala, Ray Harvey, and Joseph Klen, as Trustees of the Fireman's Pension Fund of the City of Hammond, Indiana, be and hereby is granted. It is further ORDERED that judgment be entered in favor of those defendants and against the plaintiff with costs to be taxed.