George FITZPATRICK, et al., Plaintiffs,

v.

Sergeant Lee MEYER,
et al., Defendants.

No. C–1–92–0011.

United States District Court,
S.D. Ohio.

Dec. 9, 1992.

See also 809 F.Supp. 1299.

Geoffrey Webster, Columbus OH, for plaintiffs.

Edward Goldman, Cincinnati, OH, Gary Ostendarp, Batavia, OH, Mark Landes, Columbus, OH, John Woliver, Batavia, OH, for defendants.

## ORDER

CARL B. RUBIN, District Judge.

This matter is before the Court upon the motion of Defendants Theresa Holbrook and the Brown County Department of Hu-

man Services (BCDHS) for summary judgment (document 22). The Plaintiffs have filed a response incorporating by reference the arguments asserted in their memorandum in opposition to a motion for summary judgment previously filed by Defendants Sergeant Lee Meyer (Meyer) and the Brown County Sheriff. The Defendants incorporate by reference the factual assertions from the motion for summary judgment filed by Defendants Meyer and the Brown County Sheriff.

## Factual Background

At the time of the operative events Plaintiffs George and Heza Fitzpatrick were operating, through the Fitzpatrick Group Home Partnership, three group homes for the mentally retarded in Williamsburg, Ohio.

On November 9, 1990, Jack Mackey, Superintendent of the Brown County Board of Mental Retardation and Developmental Disabilities (MRDD), spoke by telephone with Meyer regarding an alleged sexual assault upon a resident at one of the group homes.[1] During this conversation Mackey communicated to Meyer that the group home records should be frozen.[2] Soon thereafter, Meyer arrived at the Fitzpatrick Group Home to investigate. Mackey sent MRDD case manager Todd Cribett to the home to investigate the allegation. BCDHS sent Holbrook, a Social Services/Adult Protective Services Worker. Mackey requested Holbrook's presence because of her experience, relative to Cribett's, in investigating reports alleging sexual assault.

At the home Meyer spoke with George Fitzpatrick and, without a court order, froze the group home records. Meyer did not lock up the records or physically remove them from the premises. At about the time Meyer was leaving Holbrook and Cribett arrived. Holbrook and Cribett demanded to see the records. George Fitzpatrick informed them that the records were frozen. Cribett responded that the records were frozen to Fitzpatrick's access but not to that of Holbrook or Cribett.

Holbrook and Cribett reviewed the records until late in the evening. Upon leaving the premises Holbrook and Cribett took two boxes of records, placing them in Cribett's car.[3] The balance of the records remained on the premises.

Thereafter, the Plaintiffs contacted the various agencies, offices and departments involved to determine the status of the records. Some of the records contained in the two boxes were returned to the Fitzpatricks. On November 20, 1990, Meyer and Mackey informed George Fitzpatrick that the records were no longer frozen.

The Plaintiffs filed the instant action alleging damages stemming from the Defendants freezing of the records in violation of the Fourth, Fifth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983 and § 1985. The Plaintiffs also allege damages stemming from the Defendants alleged trespass and intentional interference with contractual business relations in the operation of the homes.

The Defendants seek summary judgment on the basis of qualified immunity, failure to exhaust state remedies, failure to establish actual damages, and that a conspiracy under § 1985(3) has not been established.

## Summary Judgment

Federal Rule of Civil Procedure 56(c) permits the Court to grant summary judgment as a matter of law only after the moving party has identified as the basis of its motion "the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any" which demonstrate the absence of any genuine issue of material fact. *Celotex Corp.*

---

1. Mackey also called BCDHS, the State Department of Mental Retardation and Mental Disabilities, and George Fitzpatrick regarding the allegation. *Deposition of Jack Mackey* at 12.

2. The parties dispute as to whether Mackey instructed Meyer to freeze the records or merely suggested this course of action.

3. One box contained incident reports, *see infra* note 5, and the other contained daily logs. *Plaintiffs' Memorandum in Opposition* at 4 (document 4).

*v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). A party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) *quoting, First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968).

The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson, supra,* 477 U.S. at 255, 106 S.Ct. at 2513 *citing, Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970). The function of the Court is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *Anderson, supra,* 477 U.S. at 249, 106 S.Ct. at 2511. There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Anderson* at 249, 106 S.Ct. at 2511 *citing Cities Service,* 391 U.S. at 288–289, 88 S.Ct. at 1592–1593. If the evidence is merely colorable, *Dombrowski v. Eastland,* 387 U.S. 82, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967) or is not significantly probative, *Cities Service, supra,* 391 U.S. at 290, 88 S.Ct. at 1593, summary judgment may be granted. *Anderson, supra,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11.

### Failure to Exhaust State Remedies

The Plaintiffs assert a substantive due process claim based upon an illegal seizure of property and a procedural due process claim based upon a deprivation of property without due process of law. *Complaint* at 7, ¶ 25.

### Procedural Due Process

■ Summary judgment is granted to Defendants Holbrook and BCDHS on the Plaintiffs' § 1983 procedural due process claim for the reasoning stated in this Court's prior order ruling upon a motion for summary judgment filed by Defendants Meyer and the Brown County Sheriff. *Fitzpatrick v. Meyer,* No. 92–011 at 8–10 (S.D.Ohio Oct. 13, 1992) (order granting in part and denying in part summary judgment).

Essentially, the Plaintiffs must plead and prove that "presumptively adequate [state] remedies are inadequate before a § 1983 claim can be maintained," *Macene v. MJW, Inc.,* 951 F.2d 700, 706 (6th Cir.1991) (alteration added), because, from the record, the seizure and property deprivation they complain of was caused by random and unauthorized acts of state officials. *Watts v. Burkhart,* 854 F.2d 839, 843 (6th Cir.1988); *Parratt v. Taylor,* 451 U.S. 527, 542–43, 101 S.Ct. 1908, 1916–17, 68 L.Ed.2d 420 (1981). From the record, there is no genuine issue of material fact that the Plaintiffs have failed to plead and prove inadequate state remedies. The Plaintiffs § 1983 procedural due process claim is, therefore, not ripe. *Macene,* 951 F.2d at 703.

■ At this point in the litigation the Plaintiffs, for the first time, argue that pursuant to *Zinermon v. Burch,* 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990), their failure to plead and prove inadequate state remedies does not prevent them from asserting a § 1983 claim for deprivation of procedural due process. The Plaintiffs rely upon *Zinermon* for the proposition that when a state is able to provide predeprivation procedural due process, but fails to do so, the adequacy of post-deprivation due process need not be pleaded and proved, nor must post-deprivation due process be exhausted.[4] The Plaintiffs then assert that

---

**4.** In *Zinermon,* a former state mental hospital patient brought a § 1983 claim for deprivation of liberty without due process against the hospital for admitting him under a voluntary program when it knew or should have known that he was incompetent and, therefore, subject only to an existing involuntary placement procedure. The Court held that unlike *Parratt,* the hospital's conduct could not be characterized as random and unauthorized because the state, due to the nature of mental illness, could foresee such a deprivation, predict at what point in the admission process it would occur, and could, therefore, implement predeprivation procedural due process safeguards. *Zinermon,* 494 U.S. at 138–39, 110 S.Ct. at 990–91.

Ohio Revised Code Section 5126.33 is the vehicle for predeprivation due process which could have been, but was not, applied in the instant situation.

> Here the provisions of Revised Code Section 5126.33 provide a process for the invocation of judicial proceedings at any time there is a suspicion of abuse or neglect. No such predeprivation hearing was invoked. Plaintiffs were then not required to exhaust a post deprivation action in state court for the denial of procedural due process.

*Memorandum in Opposition to Summary Judgment* at 12–13 (document 28). The Plaintiffs' argument fails.

Ohio Revised Code § 5126.33 prescribes the procedure a county MRDD must follow in order to obtain court authorization to arrange services for a mentally retarded or developmentally disabled adult, whom the MRDD suspects has been the victim of abuse or neglect, when the consent of the adult or the adult's guardian is unavailable. Section 5126.33 is not applicable to seeking authorization to seize the records of a group home for the mentally retarded. Moreover, unlike the situation in *Zinermon,* in the instant action it was not possible for the state to anticipate or predict the officials' alleged unauthorized actions and provide predeprivation due process (i.e. notice and a hearing), *Macene,* 951 F.2d at 706, to guard against the actions.

### Substantive Due Process

■ *Parratt* is not applicable to two types of substantive due process claims:

> The first category encompasses claims based on a 'right, privilege, or immunity secured by the Constitution or federal laws other than the Due Process Clause of the Fourteenth Amendment simpliciter.' The second category ... includes allegations of official acts which 'may not take place no matter what procedural protections accompany them.'

*United of Omaha Life Ins. Co. v. Solomon,* 960 F.2d 31, 35 (6th Cir.1992) (quoting *Hayes v. Vessey,* 777 F.2d 1149, 1152 (6th Cir.1985)) (citations omitted). This Court determined in it's prior order ruling upon a motion for summary judgment filed by Defendants Meyer and the Brown County Sheriff that, from the facts, the Plaintiffs substantive due process claim falls within the second category and, therefore, the *Parratt* ripeness requirements are not applicable. *Fitzpatrick v. Meyer,* No. 92–011 at 10 (S.D.Ohio Oct. 13, 1992) (order granting in part and denying in part summary judgment).

The Defendants, focusing only on the "temporary removal of a small portion of plaintiffs' records for the limited purpose of making copies pursuant to defendants' case management duties" argue that this conduct fails the test to be applied under the second category. The test of "whether the alleged conduct shocks the conscience of the court." *Solomon,* 960 F.2d at 35.

The portion of the Defendants' conduct which the Defendants point to, standing alone, appears innocuous. In total, however, the Defendants alleged conduct—a county agency official directing a deputy sheriff to seize the records of a home for mentally retarded adults after learning of a possible sexual assault upon one of the home's residents and then the deputy, upon arriving at the home to investigate, ordering the records seized absent a court order, warrant, or exception—shocks the conscience of this Court.

### Conspiracy

■ Summary judgment is granted to Defendants Holbrook and BCDHS on the Plaintiffs' § 1985(3) claim for the reasoning stated in this Court's prior order ruling upon a motion for summary judgment filed by Defendants Meyer and the Brown County Sheriff. *Fitzpatrick v. Meyer,* No. 92–011 at 10–11 (S.D.Ohio Oct. 13, 1992) (order granting in part and denying in part summary judgment). Specifically, the Plaintiffs have not asserted "that the alleged conspiracy was racial or otherwise motivated by a class base invidiously discriminatory animus," *United Brotherhood of Carpenters v. Scott,* 463 U.S. 825, 834, 103 S.Ct. 3352, 3359, 77 L.Ed.2d 1049 (1983), as is required. *Lesser v. Braniff Airways Inc.,* 518 F.2d 538, 543 (7th Cir.1975); *Landrigan v. City of Warwick,* 628 F.2d 736,

739, n. 1 (1st Cir.1980); *Regan v. Sullivan*, 557 F.2d 300, 307 (2nd Cir.1977); *Atkins v. Lanning*, 556 F.2d 485, 489 (10th Cir.1977) (per curiam); *Bretz v. Kelman*, 773 F.2d 1026 (9th Cir.1985) (en banc). *See also*, *Ohio Inns Inc. v. Nye*, 542 F.2d 673, 679 (6th Cir.1976) (§ 1985(3) claim based upon a state action conspiracy dismissed for failure to allege racial or otherwise class-based discriminatory animus) and *Rice v. Ohio Dept. of Transp.*, 887 F.2d 716, 722 (6th Cir.1989) (grant of summary judgment upheld on § 1985(3) claim for failure to allege racial or class-based discrimination) *vacated*, 497 U.S. 1001, 110 S.Ct. 3232, 111 L.Ed.2d 744 (1990).

### No Actual Damages

■ The Defendants argue that the Plaintiffs completely fail to establish that they have suffered any damages as a result of the alleged conduct of any of the defendants. Plaintiffs' causal link between the claimed actions of defendants and their claimed damages is frivolous. The lack of any causal link between the claimed due process deprivations and actual damages mandates a nominal damage award of One Dollar ($1.00) at best. *Motion for Summary Judgment* at 7–8 (footnote omitted).

This Court notes that Fitzpatrick, "at his deposition, attested to significant losses of partnership revenue ... [$44,000 for 1991 through the first half of 1992] attributed to Defendants' unlawful actions." *Memorandum in Opposition to Summary Judgment Motion of Meyer and the Brown County Sheriff* at 12. (alteration added). From the record, this Court determines that a genuine issue of material fact exists as to the Plaintiffs' alleged damages.

### Qualified Immunity

Government officials performing discretionary functions are accorded qualified immunity from liability for civil damages provided that their actions "could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987);

*Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). "Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed light of the legal rules that were "clearly established" at the time [the action] was taken." *Anderson*, 483 U.S. at 639, 107 S.Ct. at 3038, *citing*, *Harlow*, 457 U.S. at 818, 819, 102 S.Ct. at 2738, 2739 (alteration added); *Johnson v. Estate of Laccheo*, 935 F.2d 109, 111 (6th Cir.1991). The inquiry is "whether at the time the defendant acted the rights asserted were clearly established by decisions of the Supreme Court or the courts of this federal circuit." *Garvie v. Jackson*, 845 F.2d 647, 649 (6th Cir.1988). A right is clearly established if "[t]he contours of the right ... [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640, 107 S.Ct. at 3039 (alteration added). If officials "of reasonable competence could disagree on this issue, immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341, 106, S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986); *Guercio v. Brody*, 911 F.2d 1179, 1185 (6th Cir.1990); *Dominque v. Telb*, 831 F.2d 673, 676 (6th Cir.1987).

Qualified immunity insulates "government officials from liability only in their individual capacities and only for money damages. It has no effect on their liability in their official capacities since actions against parties in their official capacities are, essentially, actions against the entities for which the officers are agents." *Littlejohn v. Rose*, 768 F.2d 765, 772 (6th Cir. 1985), cert. denied, 475 U.S. 1045, 106 S.Ct. 1260, 89 L.Ed.2d 570 (1986); *see Brandon v. Holt*, 469 U.S. 464, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985); *Monell v. Department of Social Services*, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035 n. 55, 56 L.Ed.2d 611 (1978).

Qualified immunity is a question of law to be decided by the court. *Poe v. Haydon*, 853 F.2d 418, 424 (6th Cir.1988). The questions before this Court are 1) whether the

Plaintiffs have alleged the violation of a clearly established right; and 2) whether reasonable officials in the position of the officials herein should have known that the conduct at issue was undertaken in violation of that right. *Estate of Laccheo,* 935 F.2d at 111, *citing, Brody,* 911 F.2d at 1184, and *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738.

■ In the context of a motion for summary judgment "[i]f there is 'a factual dispute (i.e., a genuine issue of material fact) involving the question on which immunity turns,' summary disposition is improper and the case must go to trial." *Heflin v. Stewart County, Tennessee,* 958 F.2d 709, 717 (6th Cir.1992). A defendant is entitled to summary judgment on qualified immunity grounds if he shows in light of clearly established principles that he could, as a matter of law, reasonably have believed that his actions were lawful. *Anderson,* 483 U.S. at 641, 107 S.Ct. at 3039; Fed. R.Civ.P. 56(c). "Since this inquiry will turn on the circumstances with which the official is confronted, and often on information that he possesses, the district court must consider all the undisputed evidence produced as a result of discovery, read in the light most favorable to the non-moving party." *Haydon,* 853 F.2d at 425.

The Defendants assert that qualified immunity is proper because Holbrook did not violate clearly established statutory or constitutional rights; Holbrook's inspection of the records was within her discretionary authority as an investigator for BCDHS. *Motion for Summary Judgment* at 5 (document 22). In arguing to the contrary, the Plaintiffs assert that O.R.C. §§ 5123.62(H), (T), 5123.89(A), (C), and Ohio Administrative Code § 5123:2–3–16(A) "clearly establish[ ] that the records kept by a provider of services to the mentally retarded and developmentally disabled are not public records." The Plaintiffs argue in conclusion that "[h]aving established that the records seized and removed were not subject to public review, the defense asserted of qualified immunity fails." *Memorandum in Opposition* at 7–9 (document 28).

■ The arguments asserted by the Defendants and the Plaintiffs confuse an inspection of records with an unreasonable seizure of records. As noted, the Plaintiffs claim damages from the Defendants alleged seizure of the records. The question of Holbrook's qualified immunity, therefore, does not turn on the inspection of the records but rather the Plaintiffs' right to be free from an unreasonable seizure of the records.[5]

A seizure of property "occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984); *United States v. Place,* 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983); *Texas v. Brown,* 460 U.S. 730, 747–

---

**5.** This Court agrees with the Plaintiffs that the records are "not public records," however, such a characterization does not preclude the Defendants from inspecting the records.

The Revised Code and Administrative Code sections relied upon by the Plaintiffs accord confidentiality of a mentally retarded or developmentally disabled person's records to such a person. The sections do not accord such confidentially to a group home or a group home operator or proscribe a proper governmental agency from inspecting such records. *See,* § 5123.89(A)(2) ("Disclosure may be provided for in other sections of this chapter of the Revised Code.").

A county department of human services and a county MRDD board are empowered to investigate reports of abuse, neglect, or exploitation of an adult, termed unusual or major unusual incidents, including reports of a sexual assault upon a suspected mentally retarded or developmen-

tally disabled adult. O.R.C. §§ 5101.60–5101.71, 5126.30–5126.33, 5123.61; Ohio Admin.Code § 5123:2–17–02 (providers must make records of unusual incidents available to a county MRDD case management office). The current records of a resident of a residential care facility, such as the Fitzpatrick homes, O.R.C. § 5123.19(A)(1), (3), must be maintained and made available by the care provider "for licensure review and for review by other representatives of the [MRDD]." Ohio Admin.Code § 5123:2–3–16(B) (alteration added). Prior to renewing a license the MRDD director or the director's designee are required to make a complete inspection of a residential care facility and such additional inspections as are necessary. A complete inspection includes, but is not limited, to an on-site examination and evaluation of the facility, its personnel, and the services provided. O.R.C. § 5123.19(D).

748, 103 S.Ct. 1535, 1546–1547, 75 L.Ed.2d 502 (1983) (Stevens, J., concurring in the judgment). The right to be free from unreasonable seizures is clearly established in the law. *Jacobsen*, 466 U.S. at 113, 104 S.Ct. at 1656.

 There is no genuine issue of material fact that on November 9, 1990, Holbrook arrived at the Fitzpatrick Home after Meyer had ordered the records seized and, moreover, that at least portions of the records remained seized until November 20, 1990, when Meyer and Mackey informed George Fitzpatrick that the records were no longer frozen. The alleged seizure which thereby deprived the Plaintiffs of access to the records had already occurred and was, toward the Plaintiffs, complete by the time Holbrook arrived. Neither Holbrook's inspection of the records or her participation in their removal to MRDD and BCDHS for copying alters when the alleged seizure occurred or enhances or detracts from the seizure or deprivation. Holbrook's conduct did not result in nor contribute to a seizure of the records or a deprivation of access thereto because, toward the Plaintiffs, the alleged seizure and deprivation were already complete. At most, Holbrook inspected, removed, and copied records which were already seized and to which the Plaintiffs were already fully deprived of access.

 This Court grants qualified immunity to Holbrook, as named in her individual capacity, because, regarding her conduct, the Plaintiffs have not alleged a violation of the clearly established right to be free from an unreasonable seizure.[6] *Estate of Laccheo*, 935 F.2d at 111, *citing, Brody,* 911 F.2d at 1184, and *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738.

## CONCLUSION

The motion of Defendants Theresa Holbrook and BCDHS for summary judgment on the basis of qualified immunity is hereby GRANTED to Defendant Holbrook as named in her individual capacity and is hereby DENIED as to Defendant BCDHS.

The motion of Defendants Holbrook and BCDHS for summary judgment on the Plaintiffs' substantive due process claim and on the basis of no actual damages is hereby DENIED.

The motion of Defendants Holbrook and BCDHS for summary judgment on the Plaintiffs' procedural due process claim under § 1983 and on the Plaintiffs' § 1985 conspiracy claim is hereby GRANTED.

IT IS SO ORDERED.

---

**6.** The Defendants also seek qualified immunity for BCDHS. *Motion for Summary Judgment* at 3, 4 (document 22). Because qualified immunity is available only to a defendant named in their individual capacity, *Littlejohn*, 768 F.2d at 772, this Court declines to accorded qualified immunity to BCDHS which is not and cannot be so named. *Complaint* at 2.