Ray GUTIERREZ, et al., Plaintiffs,

v.

CITY OF CHICAGO, et al., Defendants.

No. 84 C 7441.

United States District Court,
N.D. Illinois, E.D.

March 21, 1985.

Anthony G. Erbacci, Erbacci, Syracuse & Cerone, Ltd., Chicago, Ill., for plaintiffs.

Jerold S. Solovy, Barry L. Sullivan, Jenner & Block, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ROVNER, District Judge.

Plaintiffs, former employees of the City of Chicago, filed their complaint on August 28, 1984 against the City of Chicago, its Mayor, Harold Washington, and its Commissioner of Personnel, Charles A. Pounian, alleging that the defendants violated their constitutional rights by terminating them one day before their six month probationary periods of employment were due to expire. They seek reinstatement and damages for back pay and benefits. On October 19, 1984, the defendants moved to dismiss the complaint pursuant to Fed.R. Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted, or, in the alternative, to strike Counts IV and V of the complaint, pursuant to Fed.R.Civ.P. 12(f). For the reasons set forth below, this Court grants the motion to dismiss the complaint in part, denies it in part, and denies the motion to strike.

### Facts [1]

Plaintiffs were each employees in good standing of Chicago's Department of

---

1. Because on a motion to dismiss for failure to state a claim, all well-pleaded facts alleged in the complaint must be taken as true, *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80

Streets and Sanitation, assigned to the Bureau of Equipment, before January 1, 1984. Prior to that date, they were each designated as Departmental Employment Services employees in the unskilled and semi-skilled labor trade and allied occupations.

Plaintiffs each allegedly played an active role as members of the Democratic Party in the 1983 mayoral campaign and election. They did not, however, support the nominee of the Democratic Party and the ultimate victor in the 1983 general mayoral election, Harold Washington. Each plaintiff is a white male who lives in a ward that allegedly is designated as anti-administration and whose alderman has consistently voted against Mayor Washington and his "pro-administration" wards. That ward also demonstrated a "predominant preference" for someone other than Washington in the campaign and election.

Plaintiffs' positions were reclassified by an appropriations ordinance from Departmental Employment Services to Probationary Career Services effective on January 1, 1984. The probationary period for each was from January 1, 1984 to June 30, 1984. Each plaintiff received two memoranda authored by defendant Pounian and dated January 10, 1984. The memoranda informed them of the change and included a copy of Rule IX of the City's Personnel Rules which governed the probation. (Complaint, Exhibits 2, 3.) In the memorandum to all employees, defendant Pounian stated:

> Any such employee [new probationary career service employee] shall be required to serve a six month probationary period commencing January 1, 1984, provided however, that any such employee discharged during this probationary period shall be presented by the Commissioner of Personnel with a written statement of the reason for such discharge. Upon *successful* completion of this probationary period, such employee *shall* have career services status.

(Emphasis supplied.) In the second memorandum of that date directed specifically to new Probationary Career Services Employees, defendant Pounian stated:

> Your work performance will be rated by your department twice during the six month probationary period. Ratings will be in March and June 1984. Rating factors include: (1) quality and quantity of work, (2) ability to work with others, (3) ability to learn, (4) ability to work safely, (5) initiative and acceptance of responsibility, (6) use of equipment, and (7) attendance and punctuality.

> If you successfully complete your probationary period you attain full Career Service status in your title....

Employees ultimately attaining Career Service status were entitled to certain rights, including the right to written notice of disciplinary action and to a hearing prior to demotion or discharge.

On June 29, 1984, plaintiffs were each discharged allegedly for making false and misleading statements to City of Chicago investigators concerning an investigation of alleged improprieties in the Department of Sanitation, Bureau of Equipment in May, 1981. That investigation allegedly covered a substantial period of time and a large number of employees other than these plaintiffs, and no charges resulting from that investigation were brought against any plaintiff or any other Bureau employees.

In their five count complaint, plaintiffs allege that they were terminated not because of the 1981 investigation but because of their race and because of their political activity on behalf of opponents of the Mayor. They further allege that they did not violate the terms of their probation, but were discharged obviously for other non-legitimate reasons. Plaintiffs allege that by their termination, defendants: deprived them of their constitutional rights to due process in violation of 42 U.S.C. § 1983 (Count I); conspired to deprive them of their constitutional rights in violation of 42 U.S.C. § 1985 (Count II); unlawfully discriminated against them in violation of Ti-

(1957), the facts presented here are those set forth in the complaint.

tle VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (Count III); discharged them in retaliation for the exercise of their rights to free association in violation of the public policy of Illinois and of the United States (Count IV); and deprived them of their constitutional rights to freedom of speech, freedom of association, due process, and equal protection of the laws in violation of 42 U.S.C. §§ 1983, 1985, 1986, and 1988 (Count V).

## Discussion
### Count I—Due Process

Defendants contend that Count I of the complaint must be dismissed because the plaintiffs, as probationary employees, were employees at-will who had no constitutionally protected property interest in continued employment. Under Rule IX of the City's Personnel Rules covering plaintiffs' probationary employment, "A department head may discharge an employee during the probationary period provided the department head notifies the Commissioner of Personnel in writing." Defendants contend that this rule, in essence, provides that probationary employees such as plaintiffs are employees at-will who may be discharged at any time and for any reason or for no reason. *See People ex rel. Shelton v. City of Chicago*, 13 Ill.App.3d 729, 301 N.E.2d 162 (1st Dist.1973); *Rose v. Civil Service Commission*, 14 Ill.App.2d 337, 144 N.E.2d 768 (1st Dist.1957).

Plaintiffs respond by stating that in Count I of the complaint, they have alleged a "mutually explicit understanding" with defendants that they would continue their probationary employment and ultimately attain Career Service status unless they were discharged for "cause." To support their allegations that they were not "at-will" employees, but employees who could be discharged only for cause, they cite to that portion of defendant Pounian's January 10, 1984 memorandum which sets forth the seven rating factors by which their work performance purportedly was to be evaluated. They contend that because defendants enumerated rating factors based on quality of performance, they thereby "guaranteed" plaintiffs that they would not be discharged except for cause. Furthermore, they contend that in addition to the rating factors, the statement in the second January 10, 1984 Pounian memorandum to the effect that they would attain Career Service status upon satisfactory completion of the probationary period constituted a "mutually explicit understanding" that they would not be terminated except for cause. *Perry v. Sindermann*, 408 U.S 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) (a "Faculty Guide" published by college constituted *de facto* tenure system giving rise to a constitutionally protected property interest); *Begg v. Moffitt*, 555 F.Supp. 1344 (N.D.Ill.1983) (court stated "it is not clear beyond doubt that plaintiff will be unable to prove a mutually explicit understanding between his employer and himself that he would be able to obtain outside employment and longevity increases except for cause.").

Defendants argue that the rating procedure provided in the January 10, 1984 memorandum was designed not to secure affirmative rights to continued employment to probationary employees, but to provide standards and guidelines to assist the City of Chicago in determining whether to retain or dismiss such employees in its discretion. To support their argument, defendants cite *Alberty v. Daniel*, 25 Ill.App.3d 291, 323 N.E.2d 110 (1st Dist.1974), in which the plaintiff alleged that he was terminated after an allegedly improper evaluation was conducted of him as a result of his supervisor's prejudice against him because of his race and national origin. The court held that the complaint did not state a cause of action against the defendant for failing to follow the rules and regulations for the evaluation of probationary employees, stating:

> The principal purpose of the evaluation procedure is not to protect the rights of probationary employees, as plaintiff contends, but rather, to aid the department

head in making a determination to either discharge or retain such employee.

323 N.E.2d at 116.

Defendants similarly contend that plaintiffs cannot rely on the statement in the January 10, 1984 memorandum that "[i]f you successfully complete your probationary period you retain full career service in your title" to create a constitutionally protected property interest. The primary purpose of the career service laws and rules, they argue, is to "promote the good of public service" by enabling public employers to determine whether a permanent appointment is desirable, citing to *Rose v. Civil Service Commission, supra* 144 N.E.2d at 770.

■ The problem with this analysis is that it requires this Court to accept the purposes propounded by the defendants in their briefs without more—without any affidavits or other proper supporting evidentiary material—and to hold as a matter of law that those alleged purposes preclude the plaintiffs' reliance on a "mutually explicit understanding" set forth in the defendants' own written memorandum as creating a constitutionally protected property interest in their jobs. This the Court clearly may not do in considering a motion to dismiss for failure to state a claim.

■ Nor is defendants' citation to *Smith v. Board of Education of Urbana School District No. 116,* 708 F.2d 258 (7th Cir. 1983), helpful. In *Smith,* the Seventh Circuit stated that "the Fourteenth Amendment's guarantee of due process does not protect an employee's expectation of continued employment when that expectation is founded upon a mistaken understanding of state law, regardless of how reasonable that understanding is." *Id.* at 264. Defendants contend that the January 10, 1984 memoranda of Charles Pounian are inconsistent with Rule IX of the Personnel Code which allows a probationary employee to be discharged at any time during his probation for any reason so long as a statement is provided to him in writing for his discharge. *Smith* is distinguishable, however, because there the plaintiffs based their claimed property rights in their coaching positions only upon their own "misreading of the Illinois School Code, their misunderstanding of contract law, and the fact that they had been hired in the past." *Id.* Here, plaintiffs' claimed property rights are based on two memoranda written by one of the defendants, not upon their own misunderstanding. Defendants cannot take advantage of confusion that they themselves generated. If defendant Pounian's memoranda are indeed inconsistent with Rule IX and with state law, they should have to bear the consequences of issuing contradictory edicts, not plaintiffs. Accordingly, defendants' motion to dismiss Count I of the complaint is denied insofar as it alleges a constitutionally protected property interest in continued employment.

■ Plaintiff has also alleged in Count I the existence of a constitutionally protected liberty interest. (Complaint, ¶ 12.) Where no public disclosure of the reason for discharge is made, the discharge of a public employee does not deprive him of a liberty interest. *Bishop v. Wood,* 426 U.S. 341, 348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976); *Jones v. Georgia,* 725 F.2d 622, 623 (11th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 380, 83 L.Ed.2d 316 (1984); *Randle v. City of Chicago,* 527 F.Supp. 1, 8 (N.D.Ill.1979). Moreover, plaintiffs have not supported their liberty interest allegations in their brief opposing the motion to dismiss. Accordingly, defendants' motion to dismiss is granted insofar as the complaint alleges a constitutionally protected liberty interest.

### Count II—Conspiracy

Defendants contend that Count II of the complaint must be dismissed for three principal reasons: (1) plaintiffs' allegations of the existence of a conspiracy amongst defendants under 42 U.S.C. § 1985(3) to discharge plaintiffs because they are white are too conclusory to state a claim; (2) plaintiffs' allegations that they were discharged in part because they are members of a class who actively sought to prevent

Mayor Washington from becoming the mayoral candidate endorsed by the Democratic Party does not define a cognizable class sufficient to state a claim under Section 1985(3); and (3) plaintiffs' allegations at most assert an "intracorporate conspiracy" under *Dombrowski v. Dowling,* 459 F.2d 190, 196 (7th Cir.1972) of "a single act of discrimination by a single business entity...."

■ This Court finds that plaintiffs state a claim of conspiracy in violation of 42 U.S.C. § 1985(3) with sufficient specificity to survive a motion to dismiss. Plaintiffs allege that even though they successfully performed their jobs, they were discharged as a result of a conspiracy between defendants Washington and Pounian and the City of Chicago one day before the end of their six month probationary periods for spurious reasons related to an investigation that had been conducted three years before. Plaintiffs further allege that they were discharged only because of their race and their anti-administration political affiliations and activities. These allegations are sufficient to meet the standard set forth in *Jafree v. Barber,* 689 F.2d 640 (7th Cir. 1982), for pleading a conspiracy violation under 42 U.S.C. § 1985(3).[2]

■ Defendants' second argument that plaintiffs' allegations do not define a cognizable class of those who politically opposed Mayor Washington sufficient to state a claim under Section 1985(3) based on violations of rights under the First Amendment is contradicted by the holding of the Supreme Court to the contrary in *United Brotherhood of Carpenters and Joiners, Local 610 v. Scott,* 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983). The Court held that "an alleged conspiracy to infringe First Amendment rights is not a violation of Section 1985(3) unless it is proved that the state is involved in the conspiracy or that the aim of the conspiracy is to influence the activity of the state." 103 S.Ct. at

3356–57. Defendants' attempt to turn this case to their advantage is perplexing in light of plaintiffs' allegations of state involvement through the conduct of an arm of the state, i.e., the City of Chicago and its Mayor and Director of Personnel.

■ Defendants' argument that plaintiffs allege at most an intracorporate conspiracy consisting of only a single act of discrimination—the discriminatory discharge of these eight plaintiffs and others similarly situated on June 29, 1984—is similarly perplexing. At least eight (and potentially many more) separate terminations for allegedly spurious racial and political reasons all on the same day hardly constitute a "single act of discrimination." Moreover, as several courts have noted, the rule in *Dombrowski, supra,* against Section 1985(3) intracorporate conspiracies has been limited in several contexts. *See, e.g., Novotny v. Great American Federal Savings & Loan Ass'n,* 584 F.2d 1235, 1256–59 (3d Cir.1978), *vacated on other grounds,* 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979); *Craft v. Board of Trustees,* 516 F.Supp. 1317, 1324 (N.D.Ill.1981); *An-Ti Chai v. Michigan Technological University,* 493 F.Supp. 1137, 1165–66 (W.D.Mich. 1980); *Rackin v. University of Pennsylvania,* 386 F.Supp. 992 (E.D.Pa.1974).

Defendants' motion to dismiss Count II of the complaint for failure to state a claim is denied.

*Count III—Unlawful Employment Practice*

■ Defendants have moved to dismiss Count III of the complaint, because, to allege a cause of action under Title VII, a plaintiff must allege the timely filing of employment discrimination charges with the EEOC and the receipt of a right to sue letter from the EEOC. Plaintiffs have not responded in their brief to defendants' argument that they have failed to exhaust their administrative remedies. Thus,

---

**2.** In *Jafree,* the Seventh Circuit affirmed the district court's dismissal for failure to state a Section 1985(3) conspiracy claim where plaintiff alleged only that the FBI refused to investigate his charges because he was "Brown," and the alleged conspiracy existed between "unknown persons." *Id.* at 643–44.

Count III of the complaint is dismissed for failure to state a claim.

## Count IV—Retaliatory Discharge [3]

■ Plaintiffs attempt to allege a state tort claim for retaliatory discharge in Count IV of the complaint, even though they have not specifically alleged pendent jurisdiction as an additional jurisdictional basis. Although defendants urge several separate reasons for dismissing this retaliatory discharge count, all but one are not persuasive.

Defendants in essence contend first that if plaintiffs allege that they were not at-will employees but employees terminable only for cause, the Seventh Circuit's decision in Lamb v. Briggs Manufacturing, 700 F.2d 1092 (7th Cir.1983), forecloses their retaliatory discharge claim here. In Lamb, the Seventh Circuit held that under Illinois law, an employee could not assert a claim for retaliatory discharge where the employee was a party to a collective bargaining agreement which provided a guarantee that employees could only be dismissed for "just cause" and which provided arbitration remedies.[4] Although this Court agrees that Lamb is some authority for the proposition that an employee who may be terminated only for just cause has no claim for retaliatory discharge under Illinois law, the proposition for which defendants would have it stand is too broad. Defendants cite it to support their contention that "[w]here an administrative mechanism exists for as-

sertion of the plaintiff's claim of wrongful discharge, no claim can be brought for retaliatory discharge." (Defendants' Reply Memorandum In Support Of Their Motion To Dismiss at 10 n. 6.) The Seventh Circuit's decision in Lamb was carefully limited to the collective bargaining context, and this Court hesitates to extend it, as defendants urge, to all cases in which some sort of "an administrative mechanism" exists for the resolution of a plaintiff's claim of unlawful discharge, particularly because it is an interpretation of Illinois law that is at issue in this case, and the Illinois courts apparently have yet to address the issue.[5]

Defendants next contend that plaintiffs' retaliatory discharge claim must be dismissed because plaintiffs' terminations were not in contravention of a clearly mandated public policy of the kind recognized in Illinois under Palmateer v. International Harvester Co., 85 Ill.2d 124, 52 Ill.Dec. 13, 421 N.E.2d 876 (1981) and Kelsay v. Motorola, Inc., 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353 (1978). Defendants argue first that terminations resulting from First Amendment activity are not cognizable in a retaliatory discharge action. The cases they cite for that assertion, however, stand for no such thing. For example, defendants' citation to Rozier v. St. Mary's Hospital, 88 Ill.App.3d 994, 44 Ill. Dec. 144, 411 N.E.2d 50 (5th Dist.1980), is inapposite because in that case the court held only that a former hospital employee had no basis for her claim that her First

---

**3.** Defendants assert that Counts IV and V of the complaint should be stricken pursuant to Fed.R. Civ.P. 12(f) because they are redundant in that both allege that plaintiffs were wrongfully discharged in retaliation for the exercise of their First Amendment rights to freedom of association and to campaign for candidates of their choice. The motion to strike is denied because the plaintiffs have clarified in their brief in response to the motion to dismiss that in Count IV they have attempted to assert a state law claim for retaliatory discharge in violation of a clear public policy of Illinois and of the United States, whereas in Count V they have attempted to plead federal claims for violation of their constitutional rights under 42 U.S.C. §§ 1983, 1985, 1986, and 1988.

**4.** In Balark v. Ethicon, Inc., 575 F.Supp. 1227, 1230 (N.D.Ill.1983), Judge Bua, following Lamb and rejecting the dissent in Jackson v. Consolidated Rail Corporation, 717 F.2d 1045 (7th Cir. 1983), cert. denied, — U.S. —, 104 S.Ct. 1000, 79 L.Ed.2d 233 (1984), similarly dismissed a state law claim for retaliatory discharge where the plaintiff was subject to a collective bargaining agreement.

**5.** Moreover, if plaintiffs do not succeed in proving they were terminable only for cause under their allegations of a "mutually explicit understanding" arising from the January 10, 1984 memoranda of defendant Pounian, they would then be entitled to resurrect their Illinois retaliatory discharge claim under defendants' argument.

and Fourteenth amendment rights to free speech were violated by her discharge because the hospital was a private employer, and, thus, the discharge involved no "state action." By contrast, here, the City of Chicago plainly is a public employer, and defendants' conduct clearly constitutes state action. Although they go to great lengths to place everything else in the complaint at issue, even defendants are not so bold as to contend that their activities do not constitute "state action."

Second, defendants argue that plaintiffs similarly cannot base the violation of public policy on their claims of race-based discrimination. They state that "[e]ven if the tort of retaliatory discharge were available under Illinois law for a discharge allegedly in retaliation for the employee's conduct in opposing discriminatory employment policies, which is doubtful at best, that would not support a cause of action where, as here, no *retaliation* for race related conduct is alleged." (Defendants' Reply Brief at 11; citation omitted; emphasis in original.) This argument adds nothing, however, because it addresses a claim which the plaintiffs do not make anywhere in Count IV. Plaintiffs' claim for retaliatory discharge is limited to the statement that "these plaintiffs were good and loyal employees of the City of Chicago during their employment, but were nonetheless unfairly discharged in retaliation for the exercise by them of their rights to free association and their rights to campaign for candidates of their choice in violation of the statute and Public Policy of the United States and the State of Illinois." (Complaint, ¶ 19.)

This Court need not decide whether plaintiffs have alleged a cognizable Illinois claim for retaliatory discharge in violation of a clearly mandated public policy, however, because as defendants point out, the doctrine of retaliatory discharge does not apply where a cause of action is available under federal or state civil rights laws to enforce the public policy allegedly contravened. *Brudnicki v. General Electric Co.*, 535 F.Supp. 84, 89 (N.D.Ill.1982); *accord, Bruffett v. Warner Communications, Inc.*, 692 F.2d 910, 919–20 (3d Cir.

1982); *Tate v. Pepsi-Cola Metropolitan Bottling Co.*, 32 Empl.Prac.Dec. (CCH) ¶ 33,951 at p. 31, 512 (E.D.Wis.1983), *aff'd mem.*, 742 F.2d 1459, 35 Empl.Prac.Dec. (CCH) ¶ 34,697 (7th Cir.1984). Both Title VII and 42 U.S.C. § 1983 provide causes of action for wrongful discharge based on political activity or on racial discrimination. This Court thus need not decide novel and complex issues of state law, *see Carrillo v. Illinois Bell Telephone Co.*, 538 F.Supp. 793, 799 (N.D.Ill.1982), because Count IV of the complaint is dismissed for the reason that the plaintiffs' state law retaliatory discharge claim is foreclosed by the availability of other claims under the federal and state civil rights laws.

*Count V—Civil Rights*

█ In Count V of the complaint, plaintiffs allege that by terminating them for engaging in protected political activity opposing Mayor Washington and because of their race, defendants violated their First, Fifth and Fourteenth Amendment rights and 42 U.S.C. §§ 1983, 1985, 1986, and 1988. Defendants' first contention that Count V must be dismissed for failure to state a claim because the allegations of the complaint are conclusory and non-fact specific has already been disposed of in discussing similar arguments by defendants for dismissing Count II. No further discussion is necessary except that it is appropriate to note that defendants' citations to cases generally involving the dismissal of non-tenured university teachers are not on point. *See, e.g., Dewey v. University of New Hampshire*, 694 F.2d 1 (1st Cir.1982), *cert. denied*, 461 U.S. 944, 103 S.Ct. 2121, 77 L.Ed.2d 1301 (1983); *Fisher v. Flynn*, 598 F.2d 663, 665 (1st Cir.1979); *Cohen v. Illinois Institute of Technology*, 581 F.2d 658, 663 (7th Cir.1978), *cert. denied*, 439 U.S. 1135, 99 S.Ct. 1058, 59 L.Ed.2d 97 (1979). It is particularly ironic that defendants should cite to such cases when they fail to even mention some of the leading Supreme Court cases on the discharge of public employees for exercising their First Amendment rights to engage in political activity, such as *Elrod v. Burns*, 427 U.S.

347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) and *Mount Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).[6]

■ Defendants also argue that the complaint must be dismissed against defendants Washington and Pounian because it contains no allegations setting forth their specific personal involvement in the plaintiffs' terminations and against the City of Chicago because plaintiffs have not alleged that their injuries resulted from any municipal policy, custom, or practice. As to the former contention, this Court is satisfied that the complaint sufficiently alleges the personal involvement of defendants Washington and Pounian to survive a motion to dismiss because it alleges that together Washington and Pounian, in both their individual and official capacities, discharged plaintiffs for reasons purportedly stemming from a 1981 investigation, not from their job performance during the six-month probationary period, and not even for the reasons stated but because of their political activities and race. As to the latter contention, it is undisputed that a municipality may be held liable under the federal civil rights statute if it has deprived a plaintiff of his constitutional rights pursuant to a policy, custom, or usage of the municipality. *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Plaintiffs' allegations that they are at least eight of a number of city employees, the total of which may exceed 100, who were wrongfully discharged sufficiently alleges a pattern of unconstitutional conduct based on information and belief that others were similarly victimized by like conduct to survive a motion to dismiss. See *Auriemma,*

*et al. v. Washington*, 601 F.Supp. 1080 (N.D.Ill.1984).

Accordingly, defendants' motion to dismiss Count V of the complaint is denied.

*Conclusion*

For the reasons set forth in this opinion, this Court grants defendants' Rule 12(b)(6) motion to dismiss Counts III and IV of the complaint for failure to state a claim, but denies the motion as to Counts I, II, and V. Count I of the complaint is dismissed only insofar as it alleges the deprivation of a liberty interest. Defendants' motion to strike pursuant to Rule 12(f) is denied.

---

**6.** In *Elrod v. Burns, supra,* the Supreme Court held in a plurality opinion that patronage dismissals severely restrict political belief and association in violation of the First and Fourteenth Amendments and that government may not force a public employee to relinquish his right to political association as the price of holding a job. In *Mount Healthy, supra,* the Supreme Court held that the presence of both permissible and impermissible motives does not

legitimize a termination that would not have occurred absent the protected political activity. *See also Nekolny v. Painter,* 653 F.2d 1164 (7th Cir.1981), *cert. denied,* 455 U.S. 1021, 102 S.Ct. 1719, 72 L.Ed.2d 139 (1982) (Seventh Circuit held that evidence was sufficient to establish that two of three employees were terminated because they worked against their township's supervisor's election).