John FONTANO, Plaintiff,

v.

CITY OF CHICAGO, et al., Defendants.

No. 85 C 1714.

United States District Court,
N.D. Illinois, E.D.

Oct. 2, 1985.

Joseph J. Spingola, Joseph J. Spingola, Ltd., Chicago, Ill., for plaintiff.

Victoria J. Sterling, Michael Small, James D. Montgomery, Corporation Counsel, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

DECKER, District Judge.

Plaintiff John Fontano (Fontano) filed an amended civil rights complaint against defendants City of Chicago (City) and Eugene Barnes (Barnes), the acting commissioner of the Department of Sewers. Count I alleges that defendants terminated Fontano's employment as a probationary career service laborer in deprivation of his federal constitutional and civil rights. The remaining two counts assert pendent state claims. The case is before the court on defendants' motion to dismiss the complaint for failure to state a cause of action.

### I. *Factual Background*

On January 1, 1984, a City ordinance reclassified Fontano from an at-will Departmental Service Employee to a Probationary Career Service (PCS) employee. The City notified Fontano and other employees of this change in status by a memorandum dated January 10, 1984. Exhibit "A" to Complaint.

The memorandum specified that Fontano would "serve a probationary period of six months ... prior to attaining Career Service status." *Id.* During his probationary period, Fontano would be governed by the City's Personnel Rules regarding PCS employees. In particular, the memorandum contained a copy of Personnel Rule IX, which includes the following provision:

*Section 3—Discipline of Probationers*

The department head may suspend a probationary employee. The employee does not have the right to request review of such action.

A department head may discharge an employee during the probationary period provided the department head notifies the Commissioner of Personnel in writing.

The memorandum also informed Fontano that his work performance would be rated twice during the probationary period on the basis of seven factors.[1] Finally, the memo-

---

**1.** The rating factors were as follows: "1) quality and quantity of work, 2) ability to work with

randum explicitly stated that "[i]f you successfully complete your probationary period you attain full Career Service status …," which entails, among other things, the right to a hearing in the event of a discharge. *Id.*

Municipal ordinance ch. 25.1 establishes the City Department of Personnel and authorizes the issuance of Personnel Rules. Chicago, Ill., Municipal Code ch. 25.1 (appended as Exhibit "B" to Complaint). One of the broad purposes of the ordinance is "to provide for a professional and progressive merit system for employment." *Id.* at ch. 25.1–1. The ordinance does not separately define "PCS employee."

The Personnel Rules expressly provide that an "employee acquires Career Service status … upon satisfactory completion of the probationary period." Rule III, § 5(2); *see also* Rule IX, § 4 (appended as Exhibit "C" to Complaint). Rule IX, § 3, quoted above, empowers the department head, in this case Barnes, to suspend or discharge a PCS employee without a hearing. The Personnel Rules sometimes place PCS and Career Service employees in the same category, but only with respect to matters unrelated to employment tenure. *E.g.*, Rules XI, § 1 (leave of absence); XVI (grievance procedure). It is undisputed that the ordinance and the Personnel Rules nowhere state that a PCS employee shall be dismissed for just cause only.

Defendants allegedly failed to rate Fontano's probationary work performance in accordance with the City's memorandum. On June 29, 1984, Barnes advised Fontano by letter that his employment was terminated. Exhibit "D" to Complaint. About a week later, Fontano received another letter from the City stating that the reason for his discharge was "excessive absenteeism." [2] Exhibit "E" to Complaint.

Fontano claims that he acquired a property right in his employment when he was given probationary employee status. Fontano alleges that he was entitled to have his probationary work performance rated according to merit. Thus, Fontano asserts, his termination without a hearing violated his constitutional due process and civil rights.

## II. *Discussion*

The sole issue before the court is whether Fontano has adequately alleged a property interest in continued public employment under the due process clause of the fourteenth amendment. The court, of course, may not dismiss the complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

The Supreme Court has held that a property interest arises if there are "rules or mutually explicit understandings" to support a claim of entitlement. *Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972); *see also Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); *Patkus v. Sangamon-Cass Consortium*, 769 F.2d 1251, 1263 (7th Cir.1985). A legitimate claim of entitlement, however, is "more than an abstract need or desire" or "a unilateral expectation." *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709.

To determine whether plaintiff has a right to keep his job, the court must turn to state law. *E.g.*, *Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976); *Patkus*, 769 F.2d at 1263. Under Illinois law, as under federal standards, public employees who cannot be dismissed except for cause have a property interest in their positions. *Patkus*, 769 F.2d at 1263 (citing *Powell v. Jones*, 56 Ill.2d 70, 77, 305 N.E.2d 166 (1973)); *cf. Levin v. Civil Service Commission*, 52 Ill.2d 516, 521, 288 N.E.2d 97 (1972).

---

others, 3) ability to learn, 4) ability to work safely, 5) initiative and acceptance of responsibility, 6) use of equipment and 7) attendance and punctuality." Exhibit "A" to Complaint.

**2.** The court notes that this proffered reason, although not denominated as such, states a violation of the City's seventh rating factor.

The exhibits attached to the complaint make clear that Fontano did not have a *legitimate* expectation of continued employment when he was reclassified as a probationary employee. The City's memorandum and the Personnel Rules expressly condition the attainment of full career service status and the accompanying right to a pretermination hearing upon successful completion of the six-month probationary period. *See* Exhibits "A" and "C" to Complaint. Furthermore, the memorandum incorporated Personnel Rule IX, § 3, which unequivocally states that a PCS employee may be summarily suspended or discharged.

Fontano's argument that the ordinance and Personnel Rules establish a property interest for all PCS employees is specious. *See Giliberto v. City of Chicago,* No. 85 C 2496, slip op. at 4 (N.D.Ill. Sept. 6, 1985) [Available on WESTLAW, DCTU database]; *cf. Randle v. City of Chicago,* 527 F.Supp. 1, 10 (N.D.Ill.1979). First, Fontano's reliance on the ordinance's general goal to enact a merit system of employment ignores the specific provisions of the Personnel Rules that, pending successful completion of the probationary peri-

od, a PCS employee may be terminated without a hearing. As is generally true in matters of statutory construction, the specific language of Rule IX, § 3 controls over the general language of ordinance ch. 25.1-1. *See, e.g., U.S. v. Kuecker,* 740 F.2d 496, 502 (7th Cir.1984). Likewise, with respect to tenure, Rule IX, § 3 outweighs the other unrelated rules equating PCS and Career Service employees.

Furthermore, notwithstanding plaintiff's suppositions, dismissal without a hearing is not inconsistent with the nature of probationary employment. The right to a pretermination hearing is attendant upon the right to continued employment. In the context of civil service, however, probation signifies "trial" or "test." *See, e.g., Black's Law Dictionary* 1082 (rev. 5th ed. 1979). It would subvert the logic of the civil service system to grant a probationer a vested right in career employment, with the concomitant right to a pretermination hearing, before he is tested for the position. Thus, the court concludes that, under Illinois law, PCS employees do not attain a legitimate entitlement to continued employment until they have successfully completed their probationary term.[3] *See Rose v.*

---

3. Although Fontano mentions the rating factors only in connection with an implied contract theory, *see infra* p. 603, the court determines that they fail to give rise to a "mutually explicit understanding" that Fontano would not be discharged except for cause. The court observes that this conclusion conflicts with the analogous cases of *Gutierrez v. City of Chicago,* 605 F.Supp. 973, 976–77 (N.D.Ill.1985) and *Giliberto v. City of Chicago,* No. 85 C 2496, slip op. at 4–5 (N.D.Ill. Sept. 6, 1985) [Available on WESTLAW, DCTU database] (Grady, J., following *Gutierrez* without discussion). *Gutierrez* construed the same memorandum at issue on a motion to dismiss. Judge Rovner upheld the bare allegation of discharged PCS employees that the rating factors as well as the statement that Career Service status accrues upon successful completion of the probationary period create a "mutually explicit understanding" of continued employment. 605 F.Supp. at 976–77. Accepting plaintiffs' assertion that the memorandum and Rule IX are inconsistent, Judge Rovner concluded that defendants should bear the burden of the "confusion … they … generated" and their "contradictory edicts." *Id.* at 977. Consequently, Judge Rovner refused to dismiss plaintiffs' complaint without affidavits or addi-

tional evidentiary material supporting the City's interpretation of its rules and memorandum. *Id.*

*Gutierrez* ignores the well-settled duty of the court to determine as a matter of law whether or not an ambiguity exists in a contract or statute. *E.g., Reichelt v. Urban Investment and Development Co.,* 611 F.Supp. 952, 954 (N.D.Ill. 1985). The court finds neither confusion nor ambiguity of a constitutional dimension from the face of the memorandum, ordinance, and rules attached to Fontano's complaint. Far from being contradictory, Rule IX, § 3 and the reference to the rating factors can be reconciled within the transitional context of probationary employment. *See supra* p. 602. Giving sensible content to both provisions, the court concludes that the mere acknowledgement of rating factors does not constitute an obligation on the part of defendants to discharge PCS employees for good cause only. The court does not need parol evidence to decide this integral question of law. Accordingly, the court declines to follow the reasoning of *Gutierrez,* which, for the first time, would effectively enable any disgruntled ex-probationer to survive a motion to dismiss in federal court.

*Civil Service Commission,* 14 Ill.App.2d 337, 343, 144 N.E.2d 768 (1957) (civil service statute intended to give department head "broad authority in determining whether a probationer is the proper person to discharge the duties of his office"); *cf. Romanik v. Board of Fire and Police Commissioners,* 61 Ill.2d 422, 425, 338 N.E.2d 397 (1975) (probationary police officers may be summarily discharged).

Next, Fontano asserts that the City's reference in its memorandum to rating factors created an implied employment contract obligating defendants to terminate Fontano for just cause only, particularly his failure to satisfy the seven enumerated factors.[4] *See* Complaint at ¶ 10. Plaintiff alleges that the terms of his unwritten contract of employment were implicitly modified at the time of his reclassification. An implied contract deserves constitutional protection only if state law recognizes its validity.[5] *See Malcak v. Westchester Park District,* 754 F.2d 239, 242 (7th Cir.1985).

Fontano acknowledges the general rule in Illinois that an employer's announced and written personnel policies are a gratuity rather than a part of the employment contract. *See, e.g., Patkus,* 769 F.2d at 1263–64; *Pudil v. Smart Buy, Inc.,* 607 F.Supp. 440, 442–43 (N.D.Ill.1985); *Johnson v. Figgie International, Inc.,* 132 Ill.App.3d 922, 926–27, 87 Ill.Dec. 669, 477 N.E.2d 795 (1985); *Sargent v. Illinois Institute of Technology,* 78 Ill.App.3d 117, 121–22, 33 Ill.Dec. 937, 397 N.E.2d 443 (1979). Under traditional Illinois law, Fontano has utterly failed to demonstrate sufficient consideration to create mutuality of obligation with his employer. *See Sargent,* 78 Ill.App.3d at 122, 33 Ill.Dec. 937, 397 N.E.2d 443; *Carter v. Kaskaskia Community Action Agency,* 24 Ill.App.3d 1056, 1059, 322 N.E.2d 574 (1974).

Nevertheless, Fontano seeks asylum under a recent Illinois Appellate Court decision questioning and rejecting this general rule. *Kaiser v. Dixon,* 127 Ill.App.3d 251, 82 Ill.Dec. 275, 468 N.E.2d 822 (1984). *Kaiser,* however, does not salvage Fontano's complaint. *Kaiser* held that a detailed, 83–page policy manual that clearly imposed obligations on both the employee and employer was enforceable under the particular facts of that case. 127 Ill. App.3d at 263, 82 Ill.Dec. 275, 468 N.E.2d 822. The City's memorandum to Fontano is hardly of the same caliber. Even under the progressive reasoning of *Kaiser,* the three-sentence reference to rating factors in the memorandum is a "mere expression of employer policies and procedures as guidance or for informational purposes" for PCS employees. *Id.; see also Alberty v. Daniel,* 25 Ill.App.3d 291, 298, 323 N.E.2d 110 (1974) (principal purpose of analogous evaluation procedure "is not to protect the rights of probationary employees ... but ... to aid the department head in making a determination to either discharge or retain such employee").

In sum, the court concludes that the City's general policy statement with respect to rating factors does not constitute a binding contractual obligation, either express or implied.[6]

---

4. As discussed above, there is nothing in the ordinance or Personnel Rules that implicitly modifies the mutual understanding that a PCS employee may be discharged without cause or a hearing. Thus, plaintiff's implied contract theory rests entirely on the memorandum's reference to rating factors.

5. The court's finding that the rating factors fail to give rise to a "mutually explicit understanding" of continued employment does not foreclose Fontano's implied contract theory. It is well-settled under Illinois law that an implied contract is an obligation created independent of an agreement by the parties and arises from the facts and circumstances. *E.g., McDaniel v. Silvernail,* 37 Ill.App.3d 884, 888, 346 N.E.2d 382 (1976) (citation omitted).

6. Plaintiff concedes that he has not attempted to raise an equal protection claim. The court has also considered plaintiff's other contentions and finds that none states a federal cause of action. Moreover, because there is no remaining federal claim to which Fontano's state claims may append, the court dismisses Counts II and III as well. *See U.M.W. v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

III. *Conclusion*

Plaintiff's unilateral expectancy of continued probationary employment does not give rise to a constitutional entitlement. For the reasons stated, plaintiff has failed to state a federal cause of action. Accordingly, the defendants' motion to dismiss the complaint is granted.