**Marlene ROJICEK, Plaintiff,**

v.

**COMMUNITY CONSOLIDATED SCHOOL DISTRICT 15, and Laura R. Crane, Nancy B. Murtaugh, Suzanne H. Bassi, Terry Francl, Louis A. Sands, Patsy M. Street, and Kurt Unverricht, individually and in their official capacities, and John Conyers, George Lingel and Linda Vass, individually and in their official capacities, Defendants.**

No. 94 C 6503.

United States District Court,
N.D. Illinois,
Eastern Division.

May 17, 1995.

Order Granting Reconsideration
in part July 10, 1995.

Claudia Oney, Patricia Kiper Rummer, Claudia Oney, P.C., Chicago, IL, for plaintiff.

James C. Franczek, Andrea R. Waintroob, Sheila Marie Brennan, Franczek, Sullivan, Mann, Crement, Hein, Relias, P.C., Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Plaintiff, Marlene Rojicek ("Rojicek"), filed a five-count amended complaint against the defendants relating to her discharge from employment as a payroll specialist at Community Consolidated School District 15 ("School District 15"). Pursuant to FED.

R.Civ.P. 12(b)(6), defendants have moved to dismiss plaintiff's Amended Complaint in its entirety. For the reasons set forth below, the defendants' motion is granted in part and denied in part.

## I. *FACTS*

The following is a summary of the facts in the light most favorable to the plaintiff. On November 8, 1993, Rojicek was hired by defendant School District 15 as a payroll specialist. Throughout her employment, Rojicek performed her job duties in a manner that met and exceeded the legitimate expectations of the School District and the individual defendants. In fact, at some time during July, 1994, Rojicek was informed that her immediate supervisor, defendant George Lingel ("Lingel"), had recommended her for a bonus.

Soon thereafter, however, Rojicek discovered that Lingel's earnings were overstated in reports to the Illinois Teacher Retirement System ("TRS"), the statewide plan which provides retirement benefits to Illinois public school teachers. Rojicek noted that Lingel's salary, as reported to the TRS, mistakenly included the School District's Medicare contribution on Lingel's behalf. Although Rojicek called the overstatement to Lingel's attention, Lingel instructed Rojicek to enter the salary as it had been entered the previous year. About a month later, after Rojicek completed the TRS report, she again asked Lingel to correct his salary on the report. Lingel refused and expressly directed Rojicek to report the overstated earnings. On August 15, 1994, the date the report had to be filed, Rojicek informed Lingel that she would not sign the report because she believed it contained fraudulent information. After this, Lingel signed it himself and later stated to Rojicek that "I have serious concerns whether you can be a team player."

On August 18, 1994, the date bonuses were paid, Rojicek did not receive one. In response, she took the matter to defendant John Conyers, the School District's Superintendent. Conyers, however, refused to discuss the matter with her, only telling her that he would discuss the bonus list with Lingel and defendant Linda Vass (Lingel's supervisor).

The following day, August 19, 1994, Vass and Lingel summoned Rojicek to a meeting, at which they criticized her job performance and informed her that they planned to investigate various aspects of her job performance. On August 23, 1994, Lingel wrote a memo to Rojicek again criticizing her job performance. Soon thereafter, on September 2, 1994, Lingel wrote a memo to Rojicek informing her that she was suspended with pay pending the outcome of his recommendation that the District 15 Board of Education terminate her employment at its September 14, 1994, meeting. In the same memorandum, Lingel informed Rojicek of her right to a pre-termination hearing at which she would be allowed to present her side of the matter.

Prior to her pre-termination hearing, Rojicek received a letter from James Franczek, the attorney representing School District 15. The letter similarly informed Rojicek of her right to a pre-termination hearing and stated that the hearing was being "called pursuant to, and in accord with, the District's responsibilities under the United States Supreme Court's decision in *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985)." Rojicek's pre-termination hearing was held on September 14, 1994. At the hearing, Rojicek described in detail the sequence of events involving Lingel's reporting of his salary to TRS. Later that evening, the Board of Education (all of whom are named individually as defendants in the case) accepted the recommendation of defendants Crane, Murtaugh and Conyers and terminated Rojicek's employment with the School District.

At some point prior to September 14, 1994, School District 15 ordered a classified ad in the Daily Herald, a local newspaper. The ad sought applicants for plaintiff's job. As the ad ran in the morning editions of the Daily Herald on September 14, 1994, it predated Rojicek's hearing and actual termination.

## II. *STANDARD OF REVIEW*

■ A Rule 12(b)(6) motion to dismiss for failure to state a claim is granted only where it is beyond doubt that the plaintiff is

882

unable to prove any set of facts that would entitle her to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). The Court must take all well pleaded facts and allegations as true, and must view them in the light most favorable to the plaintiff. *Ellsworth v. City of Racine,* 774 F.2d 182, 184 (7th Cir.1985), *cert. denied,* 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986). Furthermore, the plaintiff is entitled to all reasonable inferences that may be drawn from the complaint. *Id.*

## III. *ANALYSIS*

Plaintiff's Amended Complaint alleges the following five claims against the defendants: (1) intentional deprivation of plaintiff's right to freedom of speech; (2) intentional deprivation of plaintiff's property interest in continued employment; (3) intentional deprivation of property rights in violation of her right to due process; (4) conspiracy to deprive plaintiff of her constitutional rights of freedom of speech and property; and (5) retaliatory discharge. Defendants have filed a motion to dismiss each of the claims. The court considers each in turn.

### A. *Intentional Deprivation of Plaintiff's Right to Freedom of Speech*

■ In Count I under 42 U.S.C. § 1983, plaintiff claims that the termination violated her First Amendment rights because her speech was protected under *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). Defendants, meanwhile, contend that plaintiff's allegations fail to establish that her speech addressed a matter of public concern. Defendants argue that Rojicek's speech was solely a matter of private concern, related to her dissatisfaction or disagreement with office procedures, to her interest in obtaining a bonus, and to her subsequent interest in saving her job. As such, defendants ask that plaintiff's First Amendment claim be dismissed in its entirety.

■ In order to properly plead under Section 1983 that defendants' termination deprived her of her free speech rights, Rojicek must allege: (1) that the exercise of her free speech rights was causally connected to her termination, and (2) that her speech was

constitutionally protected. *Caldwell v. City of Elwood, Ind.,* 959 F.2d 670, 672 (7th Cir. 1992), *citing Barkoo v. Melby,* 901 F.2d 613, 617 (7th Cir.1990). The Supreme Court has held that speech is constitutionally protected if it pertains to a matter of public concern. *Waters v. Churchill,* —— U.S. ——, ——, 114 S.Ct. 1878, 1884, 128 L.Ed.2d 686 (1994), *citing Connick,* 461 U.S. at 142, 103 S.Ct. at 1687. Furthermore, the Supreme Court has established that courts should look to the content, form, and context of a given statement, as revealed by the whole record, in determining whether the statement addresses a matter of public concern. *Connick,* 461 U.S. at 147–48, 103 S.Ct. at 1690–91.

The Seventh Circuit has similarly added that a speaker's motivation in making a statement may determine whether such statement was directed toward a matter of public or private concern. *Colburn v. Trustees of Indiana University,* 973 F.2d 581, 586 (7th Cir.1992). In other words, "even if an issue is one of public concern in a general sense ... still we must ask whether the speaker raised the issue *because* it is a matter of public concern or whether, instead, the issue was raised to 'further some purely private interest.' " *Hartman v. Board of Trustees of Community College District 508,* 4 F.3d 465, 471 (7th Cir.1993), *citing Callaway v. Hafeman,* 832 F.2d 414, 417 (7th Cir.1987). Finally, the Seventh Circuit has stated that when the speaker's motives are mixed, "the speech will not be found to raise a matter of public concern if 'the overriding reason for the speech,' as determined by its content, form, and context, appears to have been related to the speaker's personal interests as an employee." *Hartman,* 4 F.3d at 471–72, *citing Colburn,* 973 F.2d at 587.

Plaintiff has adequately alleged that the exercise of her right to free speech was causally connected to her termination. Therefore, the only issue for the court, in relation to Count I, is whether Rojicek's alleged speech was a matter of public or private concern. Clearly, any attempt to defraud the TRS constitutes a misuse of public funds and is cause for general public concern. Therefore, the question for the court is whether plaintiff was speaking more like a

citizen or a disgruntled employee whose statements were primarily of personal interest. *Colburn,* 973 F.2d at 585 (citing *Connick,* 461 U.S. at 147, 103 S.Ct. at 1690).

When viewed in the light most favorable to plaintiff, the content, context, and form of plaintiff's statements indicate that they were made as a matter of public concern. Similarly, plaintiff's motivation in making the statements seems to have been based on her general public concern regarding the misuse of public monies. In fact, plaintiff's initial objection to Lingel's TRS overstatement was in no sense self-serving. That is, she had little or nothing to gain by bringing the issue to Lingel's attention. Rather, the general public (and Lingel himself) would seem to have been the main beneficiaries of plaintiff's initial actions.

In addition, plaintiff was not acting to further her private interests when she raised the issue to Lingel the second time, on August 8, 1994. Had she been acting out of personal concern, she most likely would have refrained from raising the issue again with Lingel. Instead, plaintiff acted against her own best interest by further pursuing the matter. In other words, plaintiff understood that Lingel did not wish to change his inaccurate salary report to TRS. Yet, out of public concern, plaintiff took additional actions in an attempt to correct the misstatement.

Defendants are correct in stating that plaintiff tried to inform the School District Superintendent, Conyers, about Lingel's alleged TRS misstatement only after the revocation of her bonus. However, from a legal standpoint, it is irrelevant that plaintiff did not originally attempt to discuss the issue with anyone other than Lingel. As a matter of law, the private expression of one's views is constitutionally protected. *Givhan v. Western Line Consolidated School District,* 439 U.S. 410, 413, 99 S.Ct. 693, 695, 58 L.Ed.2d 619 (1979).

Furthermore, the fact that plaintiff attempted to speak with Conyers only after her bonus was revoked, does not affirmatively establish that she was acting out of a private concern at the time. In fact, plaintiff's brief meeting with Conyers took place only three days after she informed Lingel that she would not sign the fraudulent report and only three days after Lingel allegedly signed it himself. In light of plaintiff's previous actions regarding the issue, one can reasonably infer that plaintiff's attempted meeting with Conyers was simply a continuation of her attempts to address a public matter. Had plaintiff not previously acted to address the problem, one might then reasonably infer that her attempted meeting with Conyers was based on a private concern and was thus not constitutionally protected.

Therefore, the alleged facts, taken as true and viewed in the light most favorable to plaintiff, do not indicate that plaintiff's actions overwhelmingly resulted from her dissatisfaction or disagreement with office procedures, from her interest in obtaining a bonus, or from her interest in saving her job. Rather, the allegations sufficiently indicate that plaintiff's speech was a matter of public concern. Consequently, defendants' motion to dismiss Count I of the Amended Complaint is denied.

### B. *Intentional Deprivation of Rojicek's Property Interest in Continued Employment*

In Count II, plaintiff alleges that her right to a termination hearing indicates that she had a property interest in continued employment with the School District and the attendant benefits of that employment. Plaintiff claims that defendants deprived her of such property interests by terminating her employment. Defendants, meanwhile, contend that plaintiff's Count II does not allege sufficient facts to establish that plaintiff had a property interest in her job. Because the court agrees with the defendants, Count II is dismissed.

 Property interests are not created by the Constitution but rather are created, and their dimensions defined, by existing rules or understandings that stem from an independent source such as state law. *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). In *Roth,* the Supreme Court stated that "[t]o have a property interest in a benefit, a person clearly must have more than an

abstract need or desire for it. [She] must have more than a unilateral expectation of it. [She] must, instead, have a legitimate claim of entitlement to it." *Id.* Under Illinois law, employment contracts are presumed to be at will; that is, terminable by either party for good reason, bad reason, or no reason at all. *Tolmie v. United Parcel Service, Inc.*, 930 F.2d 579, 580 (7th Cir.1991), *citing Duldulao v. Saint Mary of Nazareth Hospital Center*, 115 Ill.2d 482, 106 Ill.Dec. 8, 11–12, 505 N.E.2d 314, 317–18 (1987). This general Illinois rule can only be overcome by demonstrating that the parties contracted with the intention of creating a property interest in her employment. *Duldulao*, 106 Ill.Dec. at 12, 505 N.E.2d at 318.

■ Plaintiff first contends that the existence of a protectable property interest in her employment with the School District is inferred from the fact that the District granted her a hearing prior to terminating her employment. However, the Seventh Circuit has held that an employer's decision to provide a pre-termination hearing to an employee does not, in and of itself, give that employee a protected property interest under the Fourteenth Amendment. *Lyznicki v. Board of Education, School Dist. 167, Cook County, Illinois*, 707 F.2d 949, 952 (7th Cir.1983), *citing Endicott v. Huddleston*, 644 F.2d 1208, 1214 (7th Cir.1980). In *Lyznicki* the court stated that "[a] mere right to notice and a hearing ... does not change the essential character of the employment relationship as one of employment at will; it does not convert it into a form of tenure employment and thus create a Fourteenth Amendment property right." *Lyznicki*, 707 F.2d at 952.

■ Plaintiff additionally contends that Illinois law acts to grant her a property interest in employment with the School District. Specifically, plaintiff contends that the Illinois Supreme Court's decision in *Palmateer v. International Harvester Co.*, 85 Ill.2d 124, 52 Ill.Dec. 13, 421 N.E.2d 876 (1981), created an exception to the general rule that employment in Illinois is "at-will." In *Palmateer*, the Illinois Supreme Court recognized the tort of retaliatory discharge under Illinois law. In doing so, the court held that an at-will employee who is dismissed in viola-

tion of a clearly mandated public policy may bring a retaliatory discharge cause of action against his former employer. *Palmateer*, 52 Ill.Dec. at 18, 421 N.E.2d at 881. This decision did not serve to alter Illinois' at-will employment rule, nor did it serve to create the existence of a property interest in employment for all individuals who have been terminated in violation of a clearly mandated public policy.

As a result, this Court cannot infer any reasonable facts that would seemingly grant plaintiff a protected property interest. Therefore, defendants' motion to dismiss Count II of the Amended Complaint is granted.

### C. *Intentional Deprivation of Property Rights in Violation of Rojicek's Right to Due Process*

■ In Count III of her Amended Complaint, plaintiff argues that she was deprived of her property interest in employment with the School District without due process of law. Before determining whether an individual is entitled to due process, either substantive or procedural, he or she must first establish the existence of a liberty or property interest. *Smith v. Board of Education of City of Chicago*, 853 F.2d 517, 520 (7th Cir.1988). If the plaintiff does not have a protectable property or liberty interest, she is not entitled to the procedural safeguards guaranteed by the Due Process Clause of the Fourteenth Amendment, and her due process claim should be properly dismissed. *Ratliff v. City of Milwaukee*, 795 F.2d 612, 624 (7th Cir.1986).

As stated above in relation to Count II, plaintiff's Amended Complaint fails to allege any facts which may be construed to establish the existence of a protected property interest in continued employment. Furthermore, plaintiff makes no showing of a liberty interest. Consequently, there is no need for this Court to determine whether the School District's actions conformed with the due process requirements of the Fourteenth Amendment. Therefore, defendants' motion to dismiss Count III is granted.

## D. Conspiracy to Deprive Rojicek of Her Constitutional Rights of Freedom of Speech and Property

In Count IV of her Amended Complaint, plaintiff alleges that the defendants acted in a conspiracy to violate her civil rights. To prove such a conspiracy in violation of § 1985(3), plaintiff must show "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). The Seventh Circuit has also added:

> Since its decision in *Griffin,* the Court has not expressly provided a remedy to a group or class other than blacks. The import of both *Griffin* and [*United Brotherhood of Carpenters & Joiners of America, Local 610, AFL–CIO v.*] *Scott* [463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983)] is that the legislative history of § 1985(3) does not support extending the statute to include conspiracies other than those motivated by a racial, class-based animus against "Negroes and their supporters."

*Grimes v. Smith,* 776 F.2d 1359, 1366 (7th Cir.1985); *see also Schroeder v. City of Rolling Meadows,* 1994 WL 659214, at *6 (N.D.Ill. Nov. 2, 1994). Because the plaintiff, in her Amended Complaint, has not alleged such a racial or class-based animus, Count IV is dismissed.

## E. Retaliatory Discharge and the Illinois Tort Immunity Act

In Count V, plaintiff alleges that she was fired from her employment in retaliation for her actions relating to Lingel's alleged TRS overstatement. In response, defendants argue that Count V is barred by the Illinois Local Governmental and Governmental Employees Tort Immunity Act ("Act"), 745 ILCS 10/1–101, *et seq.* While immunity under the Act does extend to negligent acts, "it does not extend to willful and wanton conduct or to acts by public employees based on corrupt or malicious motives." *Youker v. Schoenenberger,* 763 F.Supp. 361, 366 (N.D.Ill.1991). Here, the plaintiff has alleged more than mere negligence. She claims that her employment was terminated in retaliation for informing Lingel of an overstatement in the TRS report and refusing to go along with it. Assuming the allegations are true for purposes of the Rule 12(b)(6) motion, the defendants' actions constitute willful and wanton conduct. Accordingly, defendants' motion to dismiss Count V is denied.

## F. Qualified Immunity

In their motion, defendants argue that Counts I through IV should be dismissed as to the individual defendants based on qualified immunity. "Under the doctrine of qualified immunity, public officials performing discretionary functions are protected against suits for damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Doe v. Bobbitt,* 881 F.2d 510, 511 (7th Cir.1989), *cert. denied,* 495 U.S. 956, 110 S.Ct. 2560, 109 L.Ed.2d 742 (1990) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). Furthermore, the proper time to resolve a qualified immunity issue is at summary judgment. *See Auriemma v. Rice,* 910 F.2d 1449, 1452 (7th Cir.1990), *cert. denied,* 501 U.S. 1204, 111 S.Ct. 2796, 115 L.Ed.2d 970 (1991). Given the allegations made in the complaint and the early stage of the proceedings in which the court finds itself, the defendants' motion to dismiss based on qualified immunity is denied.

## G. Punitive Damages

Counts I through V of plaintiff's Amended Complaint request punitive damages against the defendants. In her response to the defendants' motion to dismiss, the plaintiff clarifies that she does not seek punitive damages from defendant School District 15. As such, her Amended Complaint is construed as requesting punitive damages only against the remaining defendants in their individual capacities.

The other defendants now contend that plaintiff's request for punitive damages should be dismissed because plaintiff has failed to allege the requisite conduct required for the recovery of such damages in

Counts I through IV. The law is clear that punitive damages under § 1983 are recoverable against public officials in their individual capacities only if the individual's conduct involves reckless or callous indifference to the plaintiff's federally protected rights or if the conduct was based upon an evil motive or intent. *Smith v. Wade*, 461 U.S. 30, 51, 103 S.Ct. 1625, 1637, 75 L.Ed.2d 632 (1983). Assuming the plaintiff's allegations are true, this court holds that plaintiff has alleged sufficient facts that the remaining defendants acted with callous indifference or with evil motive or intent. Accordingly, defendants' motion to dismiss the punitive damages claims in Counts I through IV against the remaining defendants in their individual capacities is denied.

■ Defendants also claim that the punitive damages claim in Count V against the remaining defendants should be dismissed. Defendants argue that the Illinois Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/1–101, *et seq.* bars such relief. Punitive damages are available against the individual defendants if they acted willfully and wantonly. *See Koenig v. Board of Education of Elementary School District 102*, 1993 WL 532472 (N.D.Ill. Dec. 21, 1993). As held previously, plaintiff has made such allegations. Accordingly, the punitive damages claim against the individual defendants with respect to Count V stands.

## IV. CONCLUSION

Defendants' motion to dismiss plaintiff's Amended Complaint is granted in part and denied in part. Defendants' motion to dismiss Counts II, III, and IV is granted. Counts II, III, and IV are dismissed with prejudice. Defendants' motion to dismiss Counts I and V is denied. Defendants' motion to dismiss the punitive damages claims with respect to School District 15 is granted as to all counts. Defendants' motion to dismiss the punitive damages claims with re-

spect to the remaining individual defendants is denied as to all counts.

## MEMORANDUM OPINION AND ORDER ON RECONSIDERATION

The plaintiff in this case filed a five-count amended complaint against the defendants relating to her discharge from employment as a payroll specialist at Community Consolidated School District 15. On May 17, 1995, this court entered a Memorandum Opinion and Order which granted the defendants' 12(b)(6) motion with respect to Counts II, III, and IV and denied their motion with respect to Counts I and V. Plaintiff has filed a motion asking the court to reconsider its decision dismissing plaintiff's Count IV conspiracy claim. For the reasons outlined below, plaintiff's motion to reconsider is granted in part and denied in part.

Count IV of plaintiff's complaint is entitled "Conspiracy to Deprive Rojicek of Her Constitutional Rights of Freedom of Speech and Property." The court construed the plaintiff's claim under 42 U.S.C. § 1985(3)[1] and dismissed the claim because the plaintiff had not alleged a racial or class-based animus. *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971); *Grimes v. Smith*, 776 F.2d 1359, 1366 (7th Cir.1985). The plaintiff now argues that she brought the conspiracy claim under 42 U.S.C. § 1983 and that such allegations are not limited to conspiracies based on a race or class-based animus. To a limited extent, the court agrees with the plaintiff.

■ The law is clear that Section 1983 does not punish conspiracy. *Goldschmidt v. Patchett*, 686 F.2d 582, 585 (7th Cir.1982). What it does punish is the deprivation of constitutional rights under color of state law. *Adickes v. S.H. Kress and Company*, 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970). Therefore, "[t]he gist of the cause of action [under § 1983] is the deprivation and not the conspiracy." *Lesser v. Braniff Airways, Inc.*, 518 F.2d 538, 540 n. 2

---

1. In the plaintiff's Memorandum of Law in Support of Her Response, the plaintiff quoted Judge Rovner's opinion in *Gutierrez v. City of Chicago*, 605 F.Supp. 973, 978 (N.D.Ill.1985), and argued that, based on *Gutierrez*, the defendants' motion should be denied with respect to Count IV. The plaintiff was mistaken. *Gutierrez* was a § 1985 case; in fact, the plaintiff wrongly quoted the opinion, referring to the statute as § 1983 when it stated § 1985(3).

(7th Cir.1975). It is not enough for a plaintiff merely to prove a conspiracy without proving the deprivation as well. *Id.*

Where conspiracy may apply in a Section 1983 claim can be shown in the following two situations. In the first situation, a private party conspires with a state official and their actions effectively deprive a person of a constitutional right under color of state law. The private party, even though not an official of the state, can be held liable under § 1983 if he conspired with the state actor. *Adickes,* 398 U.S. at 152, 90 S.Ct. at 1605–06. The conspiracy provides the requisite color of law for purposes of the statute. *Id.; see Dixon v. City of Lawton, Okl.,* 898 F.2d 1443, 1449 n. 6 (10th Cir.1990). In the second situation, a number of actors conspire and the conspiracy effectively deprives another of a constitutional right under color of state law. Here, the allegation of conspiracy allows the plaintiff to impute liability onto multiple defendants provided the underlying deprivation was performed in the course of the conspiracy. *Dixon,* 898 F.2d at 1449 n. 6, *see also Lesser,* 518 F.2d at 540 n. 2; *Hampton v. Hanrahan,* 600 F.2d 600, 622–23 (7th Cir. 1979).

In this case, the first situation does not apply because all of the defendants are state actors. However, the second situation may apply and the plaintiff should be given the opportunity to prove it. Accordingly, defendants' motion to dismiss Count IV is denied to the extent plaintiff alleges a § 1983 conspiracy claim to deprive her of her constitutional right to freedom of speech. For the same reasons the court expressed with respect to Count II, defendants' motion to dismiss Count IV is granted to the extent plaintiff alleges a § 1983 conspiracy to deprive plaintiff of her constitutional right to property.